PEOPLE *v.* POWELL.

1. HOMICIDE—EVIDENCE—DYING DECLARATIONS.
    In the trial of a wife for the murder of her husband by shooting, statements as to the shooting made by the husband while on an operating table at the hospital the day before he died, when he stated that he realized that he was going to die, *held*, admissible as a dying declaration.

2. SAME—INTENT—SELF-DEFENSE.
    Where the evidence for the prosecution tended to show that defendant was guilty of deliberate murder, and defendant admitted doing the shooting but claimed she did it in self-defense, the intent with which she fired the fatal shot was the only issue in the case.

3. SAME—EVIDENCE—REPUTATION—REBUTTAL—MOTIVE FOR CRIME.
    In rebuttal of testimony on behalf of defendant that her

Admissibility of dying declarations on sense of impending death is discussed in notes 56 L. R. A. 382; 6 B. R. C. 238.

On question of proving character of the accused, deceased, or parties, see notes in 2 L. R. A. (N. S.) 552; 22 L. R. A. (N. S.) 661; L. R. A. 1916A, 1245.

On weight of evidence of testimony in criminal cases of party as to his intent, see note in 23 L. R. A. (N. S.) 369.

On cross-examination of the defendant in criminal cases as to irrelevant matter, see note in 35 L. R. A. 673.

reputation for veracity and chastity was good, which tended to show a lack of motive on her part to commit the crime charged, the prosecution had a right to place before the jury any circumstance which would tend to show that defendant had a murderous impulse or emotion likely to account for her action.

4. SAME—REBUTTAL—EVIDENCE—INFERENCES.

Where, on cross-examination, defendant had denied that any of her tenants had told her that, on account of her conduct, they could not live in her house, the admission of testimony by a tenant, in rebuttal, that "I told her everything I had ever seen or knew of her and the character and disturbances that was happening around in the yard, and she did not deny it," *held*, reversible error, since said answer presented no fact to the jury, but they were left to infer what had been said, and their inference could not have been other than unfavorable to defendant.

5. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.

What another person may say in a conversation which involves an admission on the part of a person charged with crime is admissible only to the extent necessary to a full understanding of what was said by the person charged.

Error to recorder's court of Detroit; Heston (William M.), J.    Submitted April 13, 1923.    (Docket No. 105.)    Decided July 19, 1923.

Lulu Powell was convicted of manslaughter, and sentenced to imprisonment for not less than 7½ nor more than 15 years in the Detroit house of correction. Reversed.

*Speed, Ring & Kelly* (*Robert T. Speed,* of counsel), for appellant.

*Andrew B. Dougherty,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Harry S. Scheinman* and *W. McKay Skillman,* Assistants Prosecuting Attorney, for the people.

SHARPE, J.     Defendant was charged with the murder of her husband, Hayes Powell.     She here reviews her conviction of manslaughter by writ of error.

1. It is urged that a dying declaration made by the deceased should not have been admitted because not made in fear of impending death.     In answer to several questions, he stated that he thought he was going to die.     He was then on an operating table in the hospital.     He died the following day.     The jury were instructed that before they should consider the declaration they must find that at the time it was made deceased "realized that he was going to die."     There was testimony from which they might so find.     *People* v. *Christmas,* 181 Mich. 634, is not controlling.     In that case the deceased lived for seven days after the declaration was made.     This case comes within the rule stated in *People* v. *Fritch,* 210 Mich. 343, and cases cited.

2. The deceased, the defendant, Lounette Harris, her unmarried daughter by a former husband, her niece, Mollie Marshall, and her husband, all colored people, occupied rooms in an apartment house in Detroit, owned by deceased.     In his dying declaration he said that on the night of June 30, 1921, he went to the door of the room in which defendant was lying in bed with her daughter and asked her to come where he was; that she got out of bed, saying, "Ain't you tired hounding after me;" took a revolver from a wardrobe and began shooting.     Two shots were fired. One ball entered his abdomen, causing internal hemorrhage, from which he died.     The others in the apartment were awakened by the shots.     They did not see them fired or hear what was said.     If the facts as to the shooting were as detailed by the deceased, the defendant was guilty of deliberate murder. It was not necessary for the prosecution to show that

she had any motive for the shooting.    There could be no uncertainty or doubt as to her intention.    The defendant admitted the shooting, but claimed she fired the shots in self-defense.    She testified that when he came into her room he had a razor in his hand, that she—

"got up and went to the wardrobe for the gun. * * * I commenced to shoot, that is all I know. * * * I don't know what the reason was that I shot him that night, it seemed to me it was just for life, a life and death affair.    I felt that he was going to kill me and I was afraid of losing my life, and when I shot it was for the purpose of protecting myself."

She also testified that on a former occasion when she was occupying the same bed with him he had placed a razor at her throat and threatened her life; that she called the police and they quieted him and that she refused to sleep with him thereafter.    The other occupants of the apartment all testified that they saw a razor lying on the floor and that it was there when the police arrived and their attention was called to it.    This was denied by the three officers present and no razor was found, although a careful search was afterwards made for it.    Several witnesses, called by defendant, testified that her reputation for veracity and for chastity was good.    All of this testimony tended to show a lack of any motive on the part of the defendant to commit the crime charged, and her claim that the shooting was done in self-defense was strengthened thereby.

On cross-examination, without any preliminary leading thereto, defendant was asked,

"Which one of those tenants was it that told you that on account of your conduct they would not live in that house?"

She answered, over objection, "Not a one of them."

Questions of similar import were put in which the names of particular persons were stated. Defendant denied that any such conversations were had. In rebuttal, the prosecution called several of such persons. Daisy Smith was permitted, over objection, to testify as follows:

"I told Mrs. Powell I was tired of living among wild women. She asked me what was my reason for telling her that, and I told her everything I had ever seen or knew of her and the character, and disturbances that was happening around in the yard, and she did not deny it. She said she did not care, for a man was a man to her regardless of his color."

Others testified to somewhat similar statements made by them to her. The prosecution insist—

"that this testimony was proper in order to show the previous familiarities of defendant with other men, as bearing upon her motive in committing this homicide."

The intent with which defendant fired the fatal shot was the only issue in the case. It is seldom that a murder is committed without a motive therefor and, when proof thereof is absolutely lacking and the homicide is explained in any reasonable way, it is difficult indeed, if not impossible, to convince the mind of guilt. A motive is usually induced by some inward emotion, passion or feeling. In robbery or larceny, the desire for unlawful gain is ever present; in sexual crimes, the desire to gratify passion. To rebut this proof, tending to negative felonious intent, the prosecution had a right to place before the jury any circumstances which would tend to show that defendant had a murderous impulse or emotion likely to account for her action. A wide range is permitted in the introduction of proofs tending to show motive. In 1 Wigmore on Evidence, § 385 *et seq.*, the subject is discussed at length. He states that—

"Courts have therefore always been agreed that in general no fixed negative rules can be made" limiting such proof. "Obviously, the whole range of human affairs is here involved."

He quotes from *Johnson* v. *State*, 17 Ala. 627:

"With regard to the grounds from which a motive may be inferred, we may remark that the law has never limited them, and never can limit them in number or kind."

In Wharton on Homicide (3d Ed.), § 598, it is said:

"As a general rule, anything tending to show that one person is a burden upon, or obstacle in the way of the plans of, another, is admissible in evidence in a prosecution against the latter for killing the former, as tending to show motive."

The following from *State* v. *Kent*, 5 N. D. 516 (67 N. W. 1052, 35 L. R. A. 518), where the charge was wife murder, seems particularly applicable in view of the proofs submitted by defendant:

"There is evidence tending to show that he claimed for himself a higher social position than he was willing to concede to his wife. Under these circumstances, it would be intolerably galling to him to have his wife learn that he was in fact a felon, that he had married her under an assumed name, and that during all these years he had led a life of duplicity and hypocrisy."

In *State* v. *Kuhn*, 117 Iowa, 216 (90 N. W. 733), defendant was charged with the murder of her husband by poison. The prosecution sought to show on cross-examination of her that there had been a close intimacy between her and one Alexander Smith. While section 5485 of the Code of that State forbids cross-examination of a criminal defendant as to any matters not inquired about in chief, it was held that there was no error in permitting it, its purpose being—

"to show the character of the witness, to develop a motive for the crime, and incidentally as matter of contradiction."

As to the motive it was said:

"Not an adequate motive, because that never exists for murder, but such an incentive as might impel a weak or depraved mind to the act."

In Tiffany's Criminal Law (How. 4th Ed.), p. 538, it is said:

"Where the motive of a person for doing an act out of the ordinary course of events, is a legitimate subject of inquiry under the issue, all the surrounding circumstances and influences that might have contributed to or caused such motive may be inquired into."

The difficulty presented is that the witnesses were not asked nor did their answers reveal any facts which could be an aid to the jury in determining the question to be decided by them. What another person may say in a conversation which involves an admission on the part of a person charged with crime is admissible only to the extent necessary to a full understanding of what was said by the person charged. *People* v. *Austin*, 221 Mich. 635, 645. In the answer given, Mrs. Smith said:

"I told her everything I had ever seen or knew of her and the character, and disturbances that was happening around in the yard, and she did not deny it."

In what way did this answer present any fact to the jury? They were left to infer what had been said and their inference could but have been unfavorable to the defendant. We cannot well pass upon what was said when it does not appear, but if there was no answer in the nature of an admission on the part of the defendant it was clearly inadmissible

under the rule stated. As a general rule, evidence of good character may only be rebutted by evidence that it is bad. Specific acts of misconduct may not be shown for that purpose. The evidence that plaintiff's reputation for veracity was good might only be met by evidence that it was not. Such evidence was only admissible as bearing upon her credibility as a witness. It had no bearing upon the intent with which she did the shooting. The evidence offered as to her good reputation for chastity presented a different question. Her reputation as to this particular trait could only have been important if involved in the doing of the act with which she was charged and as showing a lack of motive therefor. The extent to which this might be met by the prosecution cannot be anticipated or ruled upon in the absence of any attempt to do so by competent proof.

We feel constrained to hold that it was error to admit the proof complained of and that it was so prejudicial to defendant that the conviction and sentence must be reversed and a new trial granted. It is so ordered. The defendant will be remanded to the custody of the sheriff of Wayne county to await such trial.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.