## PEOPLE v VASHER

Docket No. 99680. Argued March 8, 1995 (Calendar No. 13). Decided
August 10, 1995.

Francis Vasher was convicted by a jury in the Detroit Recorder's
Court, Prentis Edwards, J., of three counts of first-degree
criminal sexual conduct involving his four-year-old grand-
daughter and two three-year-old girls. The Court of Appeals,
CAVANAGH, P.J., and WAHLS and G. W. CROCKETT III, JJ.,
reversed in an unpublished memorandum opinion, finding that
the prosecutor's questions violated the ban against inquiry into
religious freedom, that certain testimony outlining the defen-
dant's sexual philosophy was both more prejudicial than proba-
tive and inadmissible character evidence, and that certain
rebuttal testimony was improper (Docket No. 153605). The
people appeal.

In an opinion by Justice WEAVER, joined by Justices BOYLE,
RILEY, and MALLETT, the Supreme Court *held:*

The trial court did not abuse its discretion in allowing the
evidence to be admitted.

1. A prosecutor has no duty to caution a witness to refrain
from discussing religion in an answer. A subject does not
become taboo when a witness makes a nonresponsive answer
referring to religious beliefs. In this case, questions regarding
the defendant's sexual philosophy were not designed to elicit
his religious beliefs, and the defendant did not open himself to
questioning about his beliefs by making a voluntary statement.
The prosecutor's follow-up questions did not refer to the defen-
dant's interpretation of the Bible, but instead focused on what
the defendant believed was an adequate age for a girl to begin
sexual relations. Because the defendant was not questioned
concerning his religious beliefs, his nonresponsive answer did
not create error requiring reversal, and the prohibition of MCL
600.1436; MSA 27A.1436 does not apply.

2. A review of the record indicates that the danger of unfair
prejudice resulting from the admission of the evidence of the
defendant's expressed sexual philosophy was minimal. Its pro-
bative value was not substantially outweighed by its prejudice.
Further, once the defendant placed his character in issue

during direct examination, the prosecution was entitled under MRE 404(a)(1) to rebut his assertions of impeccable character.

3. Testimony rebutting the defendant's denial that he told the witness of his sexual philosophy was properly admitted. A party is free to contradict the answers elicited from an adversary or an adversary's witness on cross-examination regarding matters germane to an issue, although a witness may not be contradicted regarding collateral, irrelevant, or immaterial matters. Here the rebuttal evidence was material and relevant and was properly limited to a simple contradiction that refuted a specific statement made by the defendant on cross-examination.

Reversed.

Justice CAVANAGH, joined by Chief Justice BRICKLEY and Justice LEVIN, dissenting, stated that admission of testimony regarding specific instances of the defendant's conduct and their proof by extrinsic evidence on rebuttal was error, and the error was not harmless.

Under MRE 404(a)(1), before the prosecution may offer testimony to rebut a pertinent trait of a defendant's character, the defendant actually must put some aspect of character in issue. Under MRE 405, the only evidence the prosecution may use on rebuttal is testimony regarding the defendant's reputation or in the form of an opinion. Use of specific instances of conduct clearly is prohibited.

MRE 608(b) prohibits the use of extrinsic evidence for impeachment purposes unless the evidence is probative of truthfulness. Under the common law, an attorney conducting cross-examination regarding a collateral matter is bound by the answers given. A matter generally is held to be collateral if the party offering it could not use it in its case in chief.

In this case, the rebuttal testimony at issue could not have been introduced in the prosecution's case in chief because it is not relevant to a material issue that the prosecution could prove independently of its use as rebuttal evidence.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for the people.

*Ellen C. Wallaert* for the defendant.

WEAVER, J. The case before us involves the intertwined evidentiary issues of undue prejudice, character, religious beliefs, and the rules of procedure regarding rebuttal.

In June, 1986, defendant Francis Vasher was babysitting his four-year-old granddaughter and two other three-year-old girls. The events of that night resulted in Vasher being shot by the father of one of the girls[1] and convicted by a jury of three counts of first-degree criminal sexual conduct. The evidence at trial showed that defendant performed various acts of sexual penetration on all three girls.

At trial the prosecution called all three victims, several of their parents, the officer in charge of the case, and the doctor who had examined one of the victims. Vasher took the stand in his own defense. During direct examination, Vasher denied having assaulted the children. He claimed that he always treated them as he would his own children. On cross-examination, Vasher said that on the basis of the Bible, he believed fourteen was an acceptable age for a girl to bear children. However, he denied that he had said young girls should be initiated into sex by their own family members. On rebuttal, the prosecution called Sherry Culkar, the mother of one of the victims. She testified that Vasher had told her that it used to be common practice for family members to introduce young girls to sexual intercourse.

The Court of Appeals reversed defendant's convictions, finding that the prosecutor's questions violated the statutory ban against inquiry into religious freedom, that certain testimony outlining

[1] When Milford Anderson was told of an assault by defendant on his daughter, he went to talk to defendant, taking along his .22 caliber rifle. After some conversation, Anderson shot defendant in the groin. Anderson was eventually convicted of careless discharge of a firearm.

defendant's sexual philosophy was both more prejudicial than probative and inadmissible character evidence, and that certain rebuttal testimony was improper. The people sought leave to appeal, which we granted. 447 Mich 987 (1994). We reverse the decision of the Court of Appeals.

I

We turn first to the statutory ban against inquiry into religious beliefs. On cross-examination, Vasher was asked:

*Q.* But you do believe in having sex with young children, don't you?

*A.* No, I do not.

*Q.* Mr. Vasher, haven't you time and time again expressed your philosophy to a number of people that children should be taught by either their father, their brother, their uncle or their grandfather what it is like to have sex?

*A.* No, ma'am, never.

*Q.* You never said that to anyone, sir?

*A.* No.

*Q.* Have you told people, sir, that anything over twelve, it is too late.

*A.* No.

*Q.* Well, how young would you go, Mr. Vasher?

*A.* I think according to the Bible the Blessed Virgin was fourteen when she conceived Christ. And I believe that God makes no mistake. Apparently, fourteen is an adequate age for a woman to produce a child.

*Q.* And fourteen, then, is an adequate age for you to engage in sexual relationships with a child, is that true, is that your statement?

*A.* If there was a love relationship, and they were wanting to get married, I think that would be between the two consenting adults.

*Q.* So, if you loved a fourteen year old, then you

would have sex with her, is that what you are telling us?

*A.* No. I am not saying that.

*Mr. Cripps:* Your Honor, at this point, we all know we are here on a charge involving very young children. His feelings about young adults having premarital sex or whatever is not relevant to the charge in relation to small children here. I am afraid we are getting far afield. I would like to lodge an objection.

*Ms. Diehl:* I think we are talking about having sex with minor children, which is against the law. And I think it is very relevant if his philosophy is he thinks there is nothing wrong with it.

*The Court:* I will sustain the objection.

*Q.* (*By Ms. Diehl*): You know who Sherry Culkar is, don't you?

*A.* Yes, I do.

*Q.* She was married to your son, Frank, Jr., is that correct?

*A.* They lived together.

*Q.* They lived together?

*A.* Yes.

*Q.* Did you tell her that girls of thirteen should have sex with men in the family such as uncles, fathers, grandfathers so they know what sex is like, know what good sex is?

* * *

*Q.* (*By Ms. Diehl*): Did you tell Sherry Culkar that?

*A.* No.

*Q.* Did you tell Sherry Culkar it is a right or duty of a father, grandfather, uncle to instruct young females?

*A.* No, I did not.

*Q.* You have a sister by the name of Miss Philomena Hart?

*A.* Hurd. Yes. Yes, I do.

*Q.* Did you tell her that anything over twelve years old is too old for you?

*A.* No, I certainly haven't.

*Q.* Do you know Shirley Byers?

*A.* Yes, I do.

*Q.* Did you voice to her your philosophy concerning young girls being that they should have sex at the time their period starts or it is too late; and the best person to teach a young girl sex was her father, brother or uncle?

*A.* No, I did not.

Vasher argues, and the Court of Appeals agreed, that any questioning about Vasher's "sexual philosophy" was forbidden after Vasher's nonresponsive answer that his belief that fourteen was "an adequate age for a woman to produce a child" was based on the Bible. This one statement was the only reference made in this context of any religious belief held by Vasher. MCL 600.1436; MSA 27A.1436 provides: "No witness may be questioned in relation to his opinions on religion, either before or after he is sworn." The threshold question is whether these questions have no reference to "opinions on the subject of religion . . . ." *People v Jenness,* 5 Mich 305, 319 (1858).

Clearly, the prosecutor's question "how young would you go" was not designed to elicit defendant's religious beliefs. Vasher's answer, phrased in terms of the Bible and the Virgin, does bring in his religion. This nonresponsive answer does not itself create error requiring reversal. A prosecutor has no duty to caution a witness to refrain from discussing religion in an answer. *People v Sommerville,* 100 Mich App 470, 487; 299 NW2d 387 (1980). However, defendant did not open himself to questioning about his religious beliefs by making this voluntary statement. *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977). Here the follow-up questions by the prosecutor did not refer to Vasher's interpretation of the Bible, but instead focused on what Vasher believed was an adequate

age for a girl to begin sexual relations. Therefore, we find no impropriety.

We wish to make clear that we in no way alter the rule set forth in *People v Hall,* 391 Mich 175; 215 NW2d 166 (1974), that the Legislature has forbidden that questions on the subject of religion be asked during the course of a criminal proceeding. However, a subject does not become taboo when a witness makes a nonresponsive answer referring to religious beliefs. For example, if a witness says he is truthful because his religion forbids him to lie, this answer does not preclude questioning him further about and even impeaching him on his veracity. See in contrast, the lines of questioning in *People v Jenness, supra* (a witness for the prosecution was asked by the defendant's counsel whether she believed in God, and whether she had at one time disavowed a belief in a Supreme Being), *People v Hall, supra* (the prosecutor asked the defendant whether he believed in the Supreme Being), and *People v Bouchee, supra* (the prosecutor asked the defendant if he was a member of any church and followed that up by asking which church it was, the Court asked the defendant whether accepting the Bible would stop him from having sexual relations with a woman to whom he was not married, and the prosecutor asked a defense witness, a minister, whether the defendant was a religious man and further questioned him regarding whether he was a practicing Christian).

Because defendant was not questioned concerning his religious beliefs, MCL 600.1436; MSA 27A.1436 does not apply.

II

The Court of Appeals found that the evidence showing defendant had said it was acceptable for

family members to initiate young girls into sexual activity was more prejudicial than probative.[2] MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphasis added.) By omitting this key concept of "substantially outweighed," the Court of Appeals applied the wrong standard of admissibility to the evidence.

In this context, prejudice means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one. In the pungent phrase of Judge Sloan in *State v Rollo*, 221 Or 428, 438; 351 P2d 422 (1960), the party "is entitled to hit as hard as he can above, but not below, the belt." McCormick, Evidence (2d ed), § 185, p 439.

The Court of Appeals apparently felt that the evidence concerning defendant's sexual philosophy was unfairly prejudicial because it might lead the jury to believe that defendant acted in conformity. Evidence presents the danger of unfair prejudice when it threatens the fundamental goals of MRE 403: accuracy and fairness. Gold, *Federal Rule of Evidence 403: Observations on the nature of unfairly prejudicial evidence,* 58 Wash L R 497 (1983). The perceived danger here is that the jury would decide that this evidence is more probative of a fact than it actually is. The Court of Appeals

[2] The Court of Appeals said: "Finally, whatever probative value the sexual philosophy evidence possessed, it was outweighed by its potential for unfair prejudice."

seems to have concluded that the jury would be shocked by the heinous nature of defendant's expressed sexual philosophy to the extent that it would conclude that anyone capable of holding such beliefs surely also would be capable of acting on them. Our review of the record convinces us that the danger of unfair prejudice resulting from the admission of this evidence was minimal. The probative value was not substantially outweighed by its prejudice. We find no error.

### III

The Court of Appeals also found that the prosecutor's questions regarding defendant's sexual philosophy were designed to impeach defendant's credibility by attempting to show that he possessed a bad general character. The Court of Appeals found that these questions were "an attempt to show that he possessed repugnant beliefs and that he acted consistently with those beliefs." This line of analysis is inaccurate.

Defendant introduced evidence that he had a close, grandfatherly, loving relationship with the girls and that this precluded him from ever harming them. On direct examination defendant testified:

> *Q.* Now, you heard allegations of sexual activity between you and one or two of these children.
> Did you at any time on that date or any date have any sexual activity with [either of the children]?
> *A.* None whatsoever. I love those children like they are my own. They call me grandpa, Paw-Paw Frank, because they love me.
> *Q.* Are you telling the Jury . . .
> *A.* (Interposing): They wasn't forced to call me Paw-Paw Frank. They did it of their own volition.

*Q.* Are you telling the Jury the truth?

*A.* Absolutely. I am a Born Again Christian. I do not lie.

*Mr. Cripps:* No further questions.

Once a defendant has placed his character in issue, it is proper for the prosecution to introduce evidence that the defendant's character is not as impeccable as is claimed. *People v Johnson,* 409 Mich 552, 558-560; 297 NW2d 115 (1980). Defendant attempted to establish that he was a loving family man who would not consider molesting young girls; the prosecution was entitled to rebut this. On cross-examination, the prosecutor attempted to rebut the defendant's assertion of good character by questioning the defendant about his views regarding sex with family members and young girls. Such rebuttal testimony is admissible under MRE 404(a)(1).

IV

Finally, we consider whether the Court of Appeals was correct in finding certain rebuttal testimony was improper.

On rebuttal, the prosecution called Sherry Culkar, who had previously lived with Vasher's son and is the mother of one of the victims. The disputed testimony is as follows:

*Q. (By Ms. Diehl):* And what is Mr. Vasher's philosophy about having sex with young children?

*A.* From what I understand, when we all lived in the house on Lincoln Street, when [the victim] was first born, he told me about way back in the olden days, the farmers and the Indians used to break the children, so that in later life they would know whether they got a fair deal or not.

*Q.* Did he tell you it was the right and duty of

fathers, grandfathers, uncles to instruct young females so they would know what good sex was?

*A.* Exactly.

The Court of Appeals held that this violated either the rule that extrinsic evidence may not be used to impeach a witness on a collateral matter, citing *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981), or the rule that the prosecutor may not divide the evidence on which the people rest their case, citing *People v Losey,* 413 Mich 346, 352; 320 NW2d 49 (1982).

A party is free to contradict the answers that he has elicited from his adversary or his adversary's witness on cross-examination regarding matters germane to the issue. As a general rule, however, a witness may not be contradicted regarding collateral, irrelevant, or immaterial matters. 98 CJS, Witnesses, §§ 632-633, pp 649-655 and *People v McGillen No 1,* 392 Mich 251; 220 NW2d 677 (1974). Here, the rebuttal evidence was narrowly focused on refuting defendant's denial that he had told Ms. Culkar about his belief that it was acceptable for family members to initiate young girls into sexual activity. This in turn was in direct response to defendant's testimony on direct examination in which he stated that he had not had sexual activity with the young girls because "I love those children like they are my own. They call me grandpa, Paw-Paw Frank, because they love me." Because this was a matter so closely bearing on defendant's guilt or innocence, it was not error for the prosecutor to have impeached defendant.

Next we turn to the question whether this evidence should have been introduced on direct examination rather than on rebuttal. The longstanding rule is that it is not proper to divide the testimony

on which the people propose to rest their case, and nothing that tends to prove the commission of the crime itself or its immediate surroundings can be classed as rebutting evidence under ordinary circumstances, if at all. *People v Quick,* 58 Mich 321, 323; 25 NW 302 (1885). The purpose of this general rule is to prevent the prosecution from "sandbagging" the defendant by introducing new, substantive evidence on rebuttal that should have been introduced in its case in chief. *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975). This rule is generally aimed at preventing the unfair ordering of proofs. *People v Dyson,* 106 Mich App 90, 97; 307 NW2d 739 (1981). As the *Dyson* Court recognized, "the *Bennett* opinion is aimed at the ruse of eliciting a 'denial' of some statement not properly in the case so as to interject an issue under the guise of rebutting the 'denial.' The 'denial' by the defendant is used as a spring board for introducing substantive evidence on a collateral matter." *Id.* at 98. Here, however, we have already recognized that the rebuttal testimony did not concern a collateral matter, but, instead focused on evidence that was material and relevant.[3]

This Court has stated[4] that when the rebuttal testimony at issue was a simple contradiction of the defendant's testimony that directly tended to disprove the exact testimony given by the. witness, it was proper rebuttal testimony. *People v Sutton (After Remand),* 436 Mich 575, 597, n 23; 464

---

[3] Rebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case. [*Bennett,* 393 Mich 449.]

[4] In his dissent, Justice CAVANAGH asserts that the "Court" did not make this statement. This is a misstatement; Chief Justice BRICKLEY expressly joined in Justice BOYLE's analysis "regarding admissibility of defendant's responses and further questioning resulting therefrom." *People v Sutton (After Remand),* 436 Mich 575, 600; 464 NW2d 276 (1990).

NW2d 276 (1990). Here, the rebuttal evidence was properly limited to being a simple contradiction that refuted a specific statement made by the defendant on cross-examination. *People v Sutton, supra; People v McGillen No 1, supra* at 266-267. We find that the trial court did not abuse its discretion in allowing the evidence to be admitted. *People v Utter,* 217 Mich 74, 83; 185 NW 830 (1921).

We reverse the decision of the Court of Appeals and reinstate defendant's convictions and sentences.

BOYLE, RILEY, and MALLETT, JJ., concurred with WEAVER, J.

CAVANAGH, J. I dissent. The majority holds that Sherry Culkar's testimony was admissible because the defendant put his character at issue by testifying that he would not have molested the victims because he loved them. The majority concludes that inquiry into specific acts of conduct, and proof thereof by extrinsic evidence, was proper as rebuttal. However, in the majority's stampede to affirm the defendant's conviction, it entirely ignores this Court's precedent and demonstrates a fundamental misunderstanding of the Rules of Evidence, specifically MRE 405 and 608(b).

I

The majority contends that the defendant opened the door to this similar acts evidence when he testified that he loved the victims and would not hurt them. MRE 404(a)(1) provides that character evidence may be used to establish "a pertinent trait of character offered by an accused, or by the prosecution to rebut the same . . . ." Thus,

before the prosecution may offer rebuttal testimony, the defendant must actually put some aspect of his character at issue.

In this case the defendant did not call any character witnesses in the traditional sense. His only "character witness" was himself. Ordinarily, if the defendant chooses to inject his own character into the trial, he does so by introducing witnesses who testify to his good character. In this case, the majority claims that he put his character at issue when he testified that he loved the victims and did not molest them. I am suspicious of the conclusion that the defendant's professed love of the victims somehow put his character at issue. Absent more direct testimony unambiguously placing defendant's character at issue, I conclude that it was not properly at issue.[1]

Nevertheless, even assuming that the defendant somehow put his character at issue, thereby permitting some form of rebuttal, the majority conveniently ignores that MRE 405 specifically dictates the forms that such rebuttal may take:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to *reputation* or by testimony in the form of an *opinion.* On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct. [MRE 405(a).]

Therefore, once a defendant puts his character at

---

[1] While I agree that sometimes the testimony of a witness may "open the door" on a pertinent trait of character, courts should be extremely reluctant to find that such is the case lest the Pandora's box of character evidence be opened every time the prosecutor draws a statement from a witness that arguably relates to a character trait. See, generally, *People v Johnson,* 409 Mich 552, 561; 297 NW2d 115 (1980).

issue, the only evidence the prosecutor may use on rebuttal is *opinion or reputation*.[2]

The case at bar is similar to *People v Champion,* 411 Mich 468; 307 NW2d 681 (1981), a unanimous decision of this Court. In that case, the defendant put his character at issue by calling two witnesses who testified regarding the defendant's reputation for truthfulness and for being a law-abiding citizen. The prosecutor did not cross-examine the defendant's witnesses about any specific acts of misconduct. Instead, he called another witness to rebut the testimony of the character witnesses by recounting specific instances of conduct. In finding this procedure improper under MRE 405(a), this Court held:

> The prosecutor may cross-examine the defendant's witness "to test his knowledge and candor . . ., and for that purpose he may be asked if he has heard of specific acts of misconduct." *People v Rosa,* 268 Mich 462, 465; 256 NW 483 (1934). *The prosecutor's rebuttal witness may testify only as to reputation, however.* In this case, the prosecutor reversed the procedure permitted under MRE 405(a) by inquiring into specific instances of conduct in examination of a rebuttal witness. [*Id.* at 471 (emphasis added); see also *People v Whitfield,* 425 Mich 116, 131; 388 NW2d 206 (1986).]

*Champion* reestablished[3] the rule that rebuttal witnesses may only give reputation or opinion testimony.

---

[2] Of course, the prosecutor may cross-examine the defendant's character witnesses with specific instances of misconduct to test the witnesses' knowledge of the defendant's reputation.

[3] Indeed, the rule is firmly entrenched even in our common law:

> [E]vidence of good character may only be rebutted by evidence that it is bad. Specific acts of misconduct may not be shown for that purpose. [*People v Powell,* 223 Mich 633, 640; 194 NW 502 (1923).]

With no discussion or analysis, the majority cavalierly casts aside over seventy years of this Court's precedent along with the Rules of Evidence by holding that specific instances of conduct may be used on rebuttal to establish character. This conclusion is legally erroneous as established by MRE 405(a), *Whitfield, Champion, supra,* and *People v Powell,* 223 Mich 633; 194 NW 502 (1923). The use of specific instances of conduct on rebuttal is clearly prohibited.[4]

II

The majority also holds that the testimony of Sherry Culkar was admissible to "refute[ ] a specific statement made by the defendant on cross-examination." *Ante* at 506. This holding, in turn, fails to discuss MRE 608(b), which prohibits the use of extrinsic evidence for impeachment purposes unless the evidence is probative of truthfulness.

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. [MRE 608(b).]

This evidentiary rule codified the long-established common-law practice that when a cross-examining

---

[4] See, generally, 1 McCormick, Evidence (4th ed), § 191, pp 812-818, and 2 Weinstein, Evidence, ¶ 405[04], pp 405-48 to 405-55.

attorney questions a witness regarding a collateral matter, the attorney is bound by the answer given. *People v Hillhouse,* 80 Mich 580, 585; 45 NW 484 (1890); *Hamilton v People,* 46 Mich 186, 188; 9 NW 247 (1881). The rationale behind this rule has long been recognized:

> The use of extrinsic evidence to contradict is more restricted due to considerations of confusion of the issues, misleading the jury, undue consumption of time, and unfair prejudice raised by the introduction of so-called collateral matters. If a matter is considered collateral, the testimony of the witness on direct or cross-examination stands —the *cross-examiner must take the witness' answer; extrinsic evidence, i.e., evidence offered other than through the witness himself, in contradiction is not permitted.* [1 McCormick, Evidence (4th ed), § 49, pp 182-183. Emphasis added.]

A matter generally is held to be collateral if the party offering it would not be allowed to offer it in the case in chief. *Id.* In the case at bar, the majority holds that the rebuttal evidence is admissible because it contradicts the defendant's professed love of the children.

> Here, the rebuttal evidence was narrowly focused on refuting defendant's denial that he had told Ms. Culkar about his belief that it was acceptable for family members to initiate young girls into sexual activity. This in turn was in direct response to defendant's testimony on direct examination in which he stated that he had not had sexual activity with the young girls because "I love those children like they are my own. They call me grandpa, Paw-Paw Frank, because they love me." Because this was a matter so closely bearing on defendant's guilt or innocence, it was

not error for the prosecutor to have impeached
defendant. [*Ante* at 504.]

In essence, the majority argues that whether the
defendant had a loving relationship with the vic-
tims was a fact of consequence. However, the
defendant's feelings are not at issue. Nowhere is it
claimed that the defendant's feelings for the vic-
tims somehow motivated him to commit these
offenses. Thus, whether the defendant loved the
children is irrelevant to guilt or innocence. Love
for a victim simply says nothing about guilt or
innocence.

Even assuming that defendant's love of the vic-
tims was somehow relevant, the testimony regard-
ing defendant's belief that young girls should have
sex with their older male relatives does nothing to
rebut the proposition that he loved these children.
No matter how repulsive the defendant's beliefs
are, they have nothing to do with his feelings for
the victims. That a defendant holds an abhorrent
belief does not logically make it more or less likely
that he loves or hates those whom the belief
affects. Indeed, the alleged beliefs of the defendant
are directed against those whom the defendant
would presumably love the most: his own family
members.

Moreover, the defendant's beliefs were directed
towards newly or nearly pubescent girls. This has
little relevance to the three-year-old complainant
in this case. Neither the majority nor the pros-
ecutor argues that the defendant was implement-
ing his beliefs with these girls, probably because it
stretches credulity to do so.

The rebuttal testimony of Culkar could not have
been introduced by the prosecutor in his case in

chief because it is not relevant to a material issue[5] that the prosecutor could prove independently of its use as rebuttal evidence. Accordingly, the prosecutor was bound by the defendant's answer that he never told anyone that children should have sex with their male relatives, because this was a collateral matter, and a witness may not be impeached with extrinsic evidence on collateral matters. *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981). While the majority pays lip service to this rule, citing *People v McGillen No 1,* 392 Mich 251; 220 NW2d 677 (1974),[6] and other authority, it fails to follow that authority.

For example, the majority represents that "[t]his Court has stated that when the rebuttal testimony at issue was a simple contradiction of the defendant's testimony that directly tended to disprove the exact testimony given by the witness, it was proper rebuttal testimony. *People v Sutton (After Remand),* 436 Mich 575, 597, n 23; 464 NW2d 276 (1990)." *Ante* at 505-506. This ignores the fact that the lead opinion in *Sutton* was signed by only three justices.[7]

---

[5] For example, the majority does not claim that the evidence is relevant to a material issue such as motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident. If such were the case, similar acts evidence would, of course, be admissible. MRE 404(b)(1).

[6] It is interesting to note that the *McGillen* Court ruled that the rebuttal testimony in that case was also improper. 392 Mich 268.

[7] It should also be noted that the lead opinion clearly held that the substantive issue had been waived by a failure to object and was, therefore, not properly before the Court.

> The defendant's failure to object prevented development of a record that would allow us to decide whether the prosecutor's question was (1) a legitimate inquiry testing the credibility of defendant's testimony on direct examination implying that he would have made an explanation consistent with his trial testimony but for the police conduct in "grabbing him," or (2) an attempt to make less probable the inference that the defendant sought to establish . . . . *Thus, it is not possible to deter-*

Chief Justice BRICKLEY concurred in the result reached by Justice BOYLE only because he held that defendant had waived the substantive issue by failing to object. Had he reached the substantive issue, the Chief Justice indicated that he would have joined Justice LEVIN's opinion.

> The record before us has been sufficiently developed for the Court to rule on whether the prosecutor's question on cross-examination was in fact error. On this issue I agree with Justice LEVIN that the question itself constituted error because it was an attempt by the prosecutor to use defendant's postarrest, post-*Miranda* [*v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] silence for impeachment.
>
> However, I concur in the result reached by Justice BOYLE because defendant waived any claim of error. *I join in her analysis to the extent that defendant's failure to object to the prosecutor's question on cross-examination pointing to a post-*Miranda *period waived any claim of error as to the question posed.* I therefore also agree with Justice BOYLE's analysis regarding admissibility of defendant's responses and further questioning resulting therefrom. [*Id.* at 600. Emphasis added.]

Contrary to the belief of the majority, it is clear that Chief Justice BRICKLEY believed that because the defendant failed to object, no relief was available. It is equally clear, however, that had an objection been raised, he would have signed Justice LEVIN's opinion. Properly understood, Chief Justice BRICKLEY's concurring opinion simply reaffirms the long-established rule that a failure to

mine whether the inquiry was improper for constitutional or evidentiary reasons. [*Id.* at 580-581. Emphasis added.]

Thus, Justice BOYLE's discussion in *Sutton* of the substantive issue is dicta.

object at the trial level will preclude subsequent appellate review in most circumstances.

Thus, the "Court" did not make the statement attributed to it; Justices BOYLE, GRIFFIN and RILEY did. It is axiomatic that it takes a majority of the participating justices to speak for the "Court."

III

I would affirm the decision of the Court of Appeals because the asserted evidentiary errors were not harmless. The defendant's conviction should be overturned because of the improper use of specific instances of conduct and their proof by extrinsic evidence on rebuttal. Having disposed of the case on this basis, I see no need to reach the issue of religion.

BRICKLEY, C.J., and LEVIN, J., concurred with CAVANAGH, J.