# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 20, 2018

v

ROGELIO ROLANDO HAMILTON,

Defendant-Appellant.

Nos. 337638; 337656
Oakland Circuit Court
LC Nos. 2016-259138-FC;
2016-259406-FC

Before: O'CONNELL, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

## I. DOCKET NO. 337638

Defendant appeals as of right his jury convictions on two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (sexual penetration with a blood relative between 13 and 16 years old), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b) (sexual contact with a blood relative between 13 and 16 years old). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to two concurrent terms of 37 to 60 years' imprisonment for the CSC-I convictions, and a consecutive term of 19 to 60 years' imprisonment for the CSC-II conviction. The trial court erroneously ordered defendant to serve his sentence for the CSC-II conviction consecutive to the sentence for his first count of CSC-I, rather than serving his CSC-I conviction consecutive to his CSC-II conviction. We affirm defendant's convictions and sentences, but remand for the ministerial correction of the judgment of sentence.

## II. DOCKET NO. 337656

Defendant also appeals as of right his jury convictions of CSC-I, MCL 750.520b(1)(b) (sexual penetration with a blood relative between 13 and 16 years old), and CSC-II, MCL 750.520c(1)(b) (sexual contact with a blood relative between 13 and 16 years old). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 37 to 60 years' imprisonment for the CSC-I conviction, and 19 to 60 years' imprisonment for the CSC-II conviction. Again, the trial court erroneously ordered defendant to serve the sentence for the CSC-II conviction consecutive to the sentence for the CSC-I conviction. The judgment of sentence also erroneously states that defendant was sentenced to 16 to 60 years' imprisonment for the CSC-II conviction in this case, which appears to be a typographical error because the trial court actually sentenced defendant to 19 to 60 years' imprisonment for the CSC-II conviction. We affirm

-1-

defendant's convictions and sentences, but remand to the trial court for ministerial correction of the judgment of sentence.

## III. FACTUAL BACKGROUND

These consolidated cases[1] arise out of defendant's sexual abuse of two of his daughters, RH and MH, between 2012 and 2015. The incidents of sexual abuse for which defendant was charged and convicted began in 2012, although defendant began exhibiting sexually abusive behavior toward RH and MH when they were between the ages of 8 and 10. Defendant's sexual abuse of RH and MH included non-penetrative touching of their breasts and buttocks, as well as digital-vaginal penetration.

## IV. EVIDENCE OF OTHER ACTS

Defendant argues that the trial court abused its discretion and denied him due process and a fair trial by allowing the prosecution to introduce evidence of other uncharged acts of sexual abuse committed against RH and MH, as well as sexually abusive behavior toward his eldest daughter, KH. We disagree.

" 'The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion.' " *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015) (citation omitted). An abuse of discretion occurs when the trial court incorrectly interprets a rule of evidence, *id.*, and when the trial court "chooses an outcome that falls outside the range of reasonable and principled outcomes," *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

MRE 404(b)(1) governs other-acts evidence, and provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Our Supreme Court has adopted a four-part test to determine the admissibility of MRE 404(b) or other-acts evidence:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting

---

[1] *People v Hamilton*, unpublished order of the Court of Appeals, entered April 5, 2017 (Docket No. 337638). This order consolidated Docket No. 337638 with Docket No. 337656.

instruction to the jury.  [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

Thus, the evidence of other acts must be offered "under something other than a character or propensity theory," i.e., for a proper purpose.  *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).  The evidence of other acts must also be relevant and the prosecutor bears the burden of establishing relevance.  *Id.*  " 'Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence.' "  *Id.* at 509-510 (citation omitted).  Accordingly, if the evidence is only relevant because it shows the defendant's character or his propensity to commit a certain crime, then it must be excluded.  *Id.* at 510.  "At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity."  *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002).  However, "the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403."  *Knox*, 469 Mich at 509.

Prior to trial in this case, the prosecution filed a motion to introduce other-acts evidence under MRE 404(b), which was granted.  The other-acts evidence related to RH included:

> a)  Defendant began sexually assaulting his daughter, [RH], when she was eight or nine years old.  The assaults continued until she was approximately fifteen years old.  One of the earliest memories she has is when she was lying in bed with Defendant and he pushed her head toward his groin area.  [RH] left the bed and exited the room.  Thereafter, Defendant sexually assaulted [RH] approximately fifteen to twenty times . . . .  These sexual assaults involved Defendant slapping her butt, pulling her nipples, groping her breasts, and rubbing and digitally penetrating her vagina.  On one occasion, she sat next to Defendant on the couch in their home . . . .  [Defendant] was next to [RH] on the couch and he fondled her breasts.  [RH] looked over at [defendant] and his penis was erect.  The majority of the aforementioned sexual assaults involved Defendant fondling [RH's] breasts underneath her shirt.

The prosecution also sought to introduce evidence that defendant would walk around the house in his underwear with his penis visible, and would enter the bathroom when RH was in there taking a shower or using the toilet.  He would also make inappropriate comments to RH like:  "If you weren't my daughter I would fuck you."

The other-acts evidence related to MH that the prosecutor sought to admit included an incident in which defendant came into the bathroom while she was in the shower and attempted to help her wash her hair and body.  That night while MH's was sleeping, she felt defendant's hand feeling her breasts over her clothes and then he put his hand down her pants and underneath her underwear.  First he rubbed her, and then he put his fingers inside her vagina.  Defendant would also slap her butt, make attempts at putting his hands underneath her shirt, walk around in his underwear with his penis visible, and would enter the bathroom when MH was in there taking a shower or using the toilet.

The prosecutor also sought to admit other-acts evidence related to defendant's eldest daughter, KH, including that defendant would slap her on the butt, rub her stomach underneath her clothing, walk around in his underwear with his penis visible, enter the bathroom when KH was in there taking a shower or using the toilet, and make inappropriate comments to KH like that she looked "fuckable."

The prosecution argued that all of this other-acts evidence was relevant and should be admitted under MRE 404(b) because it demonstrated that defendant intended to sexually assault RH and MH, and that he had employed a similar pattern of behavior over the course of many years by exhibiting sexually abusive behaviors toward RH, MH, and KH. The evidence showed defendant's common plan or scheme to groom and desexualize his daughters and was necessary to rebut defendant's argument that RH and MH fabricated the incidents. Further, this evidence was not unfairly prejudicial to defendant. The trial court agreed with the prosecution and the evidence was admitted. On appeal, defendant argues that the evidence should not have been admitted because it was not probative or relevant to the crimes of which he was accused and was unfairly prejudicial. We do not agree.

"Evidence of uncharged acts may be admissible to show that the charged act occurred if the uncharged acts and the charged act are sufficiently similar to support an inference that they are manifestations of a common plan or scheme." *People v Kahley*, 277 Mich App 182, 185; 744 NW2d 194 (2007). Defendant sexually assaulted RH and MH in similar ways, beginning in childhood and persisting into adolescence. In both RH's and MH's circumstances, defendant exhibited similar sexually abusive behaviors, including rubbing their stomachs and breasts, slapping their buttocks, and purposely walking in on them while they were showering or using the toilet. In both cases, defendant's behavior eventually escalated from non-penetrative touching—some instances of which he was not charged for—to the more severe crime of digital penetration, for which he was charged and convicted. "Under these circumstances, the charged act[s] and the uncharged act[s] are sufficiently similar to show that defendant engaged in a common plan or scheme." *Id*. In other words, as the prosecution argued, an inference arises that defendant's scheme or plan, as well as intent, was to engage in less intrusive forms of sexual touching and behaviors with his daughters in the beginning in an effort to groom and desexualize them before escalating his sexual behavior and committing the charged acts. Furthermore, because the evidence was sufficient to create an inference that defendant utilized a common plan or scheme, "the evidence was relevant to whether the charged crime occurred." *Id*. We also agree with the prosecution that the other-acts evidence related to RH, MH, and KH explains and gives context to the charged offenses, and bears on the credibility of the witnesses. See *People v Dobek*, 274 Mich App 58, 89-91; 732 NW2d 546 (2007).

Further, the probative value of the other-acts evidence introduced at trial was not substantially outweighed by any unfair prejudice to defendant. The evidence was highly probative because it was relevant to the issue of whether defendant sexually assaulted RH and MH. And, while the evidence may have been prejudicial to defendant's case, it was not unfairly prejudicial. See *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Moreover, the trial court instructed the jury regarding the weight and purpose that they should assign to evidence of other acts. The trial court stated as follows:

> You have heard evidence that was introduced to show that the defendant committed improper acts for which he is not on trial. If you believe this evidence you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that defendant used a plan, system, or characteristic scheme that he has used before or since.
>
> You must not consider this evidence for any other purpose. For example, you must not decide it shows that the defendant is a bad person or that he is likely to commit crimes.

This limiting instruction was sufficient to inform the jury that it was only permitted to consider the evidence of other acts for the specific purpose of determining whether defendant acted in conformity with a common plan or scheme. Limiting instructions protect a defendant's right to a fair trial. *People v Smith*, 243 Mich App 657, 675; 625 NW2d 46 (2000). Thus, the trial court did not abuse its discretion by admitting evidence of other acts of sexual abuse against RH, MH, and KH, and defendant's due process rights were not violated by the introduction of such evidence. Accordingly, defendant's claim is without merit.[2]

## V. CONSECUTIVE SENTENCING

Defendant argues that the trial court abused its discretion by imposing consecutive sentences because his CSC-I and CSC-II crimes did not arise out of the same transaction or offense. We disagree.

"[W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

While concurrent sentencing is the norm in Michigan, a consecutive sentence may be imposed if authorized by statute. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation omitted). The CSC I statute, MCL 750.520b, does authorize a consecutive sentence as follows:

> The court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction. [MCL 750.520b(3).]

Although the term "same transaction" is not explicitly defined in the statute, in order for two or more separate offenses to be seen as occurring within the same transaction, they must have "a connective relationship . . . of more than an incidental sort . . . ." *Ryan*, 295 Mich App at 402-403 (citation omitted). In the context of MCL 750.520b(3), a defendant must commit both CSC-

---

[2] Because we conclude that the challenged evidence was admissible under MRE 404(b), we need not consider whether it was also admissible under MCL 768.27a.

I and CSC-II in the same "transaction," with "no relevant disruption in time or in the flow of events between the two distinct offenses." *Id*. at 404; see also *People v DeLeon*, 317 Mich App 714, 721-722; 895 NW2d 577 (2016).

In Docket No. 337638, defendant was convicted of two counts of CSC-I [one as to RH and one as to MH] and one count of CSC-II [as to RH]. Defendant was convicted of the first count of CSC-I (Count I) and of CSC-II (Count III), based on his sexual assault of RH. The trial court imposed consecutive sentences for Counts I and III. Counts I and III arose out of one transaction, wherein defendant inserted his fingers beyond RH's labia and touched her breasts while she was laying on a bed. Because these two criminal acts arose out of the same transaction or occurrence, the trial court had the discretion to impose consecutive sentences for defendant's resulting CSC-I and CSC-III convictions.

Similarly, in Docket No. 337656, defendant was convicted of one count of CSC-I as to RH (Count I) and one count of CSC-II as to RH (Count II). These convictions also arose out of a single incident of sexual abuse against RH, wherein defendant touched RH's breasts and digitally penetrated her. Again, the actions that led to defendant's convictions arose out of the same transaction or occurrence, with no disruption in time between the act leading to the CSC-I conviction and the act leading to the CSC-II conviction. Therefore, trial court's decision to impose consecutive sentences on defendant, as permitted by MCL 750.520b(3), did not fall outside the range of reasonable and principled outcomes, and thus, did not constitute an abuse of discretion.

On appeal, the prosecution correctly observes that the trial court erroneously transposed the order of defendant's sentences. In both Docket Nos. 337638 and 337656, the trial court ordered that defendant must serve his CSC-II sentence consecutive to his CSC-I sentence. The language of MCL 750.520b(3) provides, instead, that the sentences for defendant's CSC-I convictions must be served consecutive to the sentences for his CSC-II convictions. That is so because the trial court is only statutorily permitted to "order a term of imprisonment imposed" for CSC-I to be "served consecutively to any term of imprisonment imposed for any other criminal offense," such as CSC-II. MCL 750.520b(3); see also *DeLeon*, 317 Mich App at 721-722. Accordingly, the prosecution has correctly pointed out that ministerial correction of the judgments of sentence is warranted. This Court also observes that the judgment of sentence in Docket No. 337656 indicates that defendant was sentenced to 16 to 60 years' imprisonment for the CSC-II conviction, but the trial court actually sentenced him to 19 to 60 years' imprisonment. The mistake on the judgment of sentence appears to be a typographical error requiring ministerial correction.

We affirm defendant's convictions and sentences, but remand for the ministerial correction of the judgments of sentence to reflect that defendant was sentenced to 19 to 60 years' imprisonment for the CSC-II conviction in Docket No. 337656, and the sentences for defendant's CSC-I convictions must be served consecutive to the sentences for his CSC-II convictions, in accordance with MCL 750.520b(3). We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto