# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOEI ALEXANDER JORDAN,

Defendant-Appellant.

UNPUBLISHED
October 11, 2016

No. 326735
Washtenaw Circuit Court
LC No. 13-001836-FC

Before: RIORDAN, P.J., and METER and OWENS, JJ.

PER CURIAM.

Defendant Joei Alexander Jordan appeals as of right his jury-trial convictions of first-degree felony murder, MCL 750.316(1)(b); first-degree home invasion, MCL 750.110a(2); and conspiracy to commit first-degree home invasion, MCL 750.110a(2).[1] The trial court sentenced him to life without parole for the murder conviction and to 95 months' to 20 years' imprisonment for the latter two convictions. We affirm.

On the night of July 23, 2013, defendant, Shaquille Jones, and Dajeon Franklin went to Ann Arbor. While walking around Ann Arbor, the men passed two other men on the street, and defendant asked Franklin if he had "that," meaning Franklin's .40-caliber Glock handgun. According to defendant's trial testimony, Franklin gave him a look as if to say, "Do I look stupid?"

Defendant entered 210 North Ingalls Street with the aid of the two others and stole a MacBook, purse, and wallet while a woman was upstairs in a bed in the house and while a light in the living room was illuminated. Defendant then decided to enter 220 North Ingalls Street. Defendant entered the house through a window and tried to steal a television, but he exited the home when he heard voices. The men observed people inside the home when they walked away from the house. Defendant testified that he was not satisfied with what they had stolen and wanted to go back to 220 North Ingalls. They returned again to 220 North Ingalls, and defendant entered a window. Thereafter, Jones and Franklin entered through a door. The three men went into the basement of the residence, and when they heard voices, they went into a pantry to hide.

---

[1] Defendant pleaded guilty to additional crimes, as stated *infra*.

-1-

After the voices stopped, defendant, Jones, and Franklin entered a basement bedroom, which was dark. The victim, Paul DeWolf, slowly stood up from his bed and walked toward the door. Defendant observed Franklin holding his gun in a firing position as the victim approached. Defendant then observed Franklin pull the gun back and hit the victim with the gun. The gun discharged. Defendant, Jones, and Franklin ran out of the residence. The victim died from the gunshot wound. Police were able to identify and locate defendant after investigating the sale of the MacBook stolen from 210 North Ingalls.

Immediately before trial, defendant pleaded guilty to first-degree home invasion and conspiracy to commit second-degree home invasion with respect to defendant's involvement with 210 North Ingalls. A jury convicted defendant as stated above for his actions at 220 North Ingalls, and defendant now appeals.

First, defendant argues that there was insufficient evidence that defendant knew in advance that Franklin carried the gun that evening or that defendant intended for Franklin to use the gun and, accordingly, defendant's felony-murder conviction was not proven beyond a reasonable doubt. We disagree. This Court reviews de novo claims regarding the sufficiency of the evidence. See *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).

Defendant's entire argument is based upon the aiding-and-abetting standard set forth in *Rosemond v United States*, ___ US ___, ___; 134 S Ct 1240, 1251; 188 L Ed 2d 248 (2014). However, *Rosemond* is limited to prosecutions for particular statutory federal offenses, is irrelevant to this case, and does not change the aiding-and-abetting standard in Michigan. See *People v Blevins*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 315774), slip op at 6. Therefore, defendant's argument is meritless. Moreover, applying the applicable Michigan aiding-and-abetting standard, there was "sufficient evidence to justify the jury's finding that defendant was guilty of felony murder beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992).

A person who aids and abets another in the commission of felony murder "shall be punished as if he had directly committed such offense." MCL 767.39. For aiding and abetting, the prosecution generally must show that "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999) (citations and quotation marks omitted). With regard to the "intent" element, the Michigan Supreme Court has held that, for a conviction under an aiding-and-abetting theory, "the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, *that the charged offense was a natural and probable consequence of the commission of the intended offense*." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006) (emphasis added).

First, it is uncontested that Franklin killed the victim in the course of a home invasion. Next, defendant performed acts or gave encouragement that assisted in the commission of the crime. *Carines*, 460 Mich at 757. Defendant conversed with Franklin a few days before the

killing about wanting to "[r]ob." Before the home invasion at 220 North Ingalls, defendant said, "What are you all standing around for? Let's go in," and it was defendant's self-proclaimed greed that brought them back to the victim's home a second time. Even more, defendant testified that he might have let the others into 220 North Ingalls by opening the back door after he went through a window. Therefore, based on defendant's testimony alone, there was sufficient evidence for the jury to reasonably conclude that defendant's actions and words encouraged and helped Franklin to commit the crime. *Id.* Third, there was sufficient evidence for the jury to infer that, under the circumstances of this case, murder was the natural and probable consequence of the intended offense. See *Robinson*, 475 Mich at 15. The jury could infer from the facts and circumstances that defendant knew Franklin had a gun. *Carines*, 460 Mich at 757-758 (discussing inferences). The prosecution presented evidence (a police interview) that when defendant asked Franklin, before the home invasion in question, if he had a gun, Franklin made movements indicating an affirmative answer. Given that defendant intended that Franklin assist him in committing home invasion of a residence that defendant had reason to know was occupied, all while defendant knew that Franklin was armed with a gun, the jury had sufficient evidence to convict defendant of felony murder. See, generally, *Robinson*, 475 Mich at 15.

Next, defendant argues that the trial court improperly admitted other-acts evidence when it allowed evidence of the minutes-earlier home invasion of 210 North Ingalls. Defendant's brief, however, is devoid of any legal reasoning to support his conclusion that the evidence of the home invasion at 210 North Ingalls was not probative. He merely states that "[t]here was nothing probative" about the evidence of the earlier home invasion but does not explain and support why this is so. Defendant has, improperly, "merely announce[d] his position and [left] it to this Court to discover and rationalize" the basis for his claim. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). He alternatively implies that the evidence was more prejudicial than probative but again does not give any analysis regarding what the probative value, as weighed against the prejudicial effect, might have been. At any rate, the evidence was probative of defendant's intent to conspire with the others to commit first-degree home invasion, and it was not substantially outweighed by the danger of unfair prejudice. See *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (discussing the test for admissibility of other-acts evidence), and *People v Buie*, 298 Mich App 50, 73; 825 NW2d 361 (2012) (discussing the concept of unfair prejudice).

Third, defendant asserts that he was denied the effective assistance of counsel when defense counsel failed to inform him of the mandatory life-without-parole sentence a felony-murder conviction carries. We remanded this case for an evidentiary hearing, and the trial court determined that defendant was not denied the effective assistance of counsel. We also conclude that defendant has failed to demonstrate that he was denied the effective assistance of counsel.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20, and US Const, Am VI. This right extends to the plea-bargaining process. *Lafler v Cooper*, ___ US ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012). To establish ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

-3-

"In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, ___ US at ___; 132 S Ct at 1384. Where the alleged prejudice is that the defendant stood trial instead of waiving it and accepted a plea offer, the defendant must show

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at ___; 132 S Ct at 1385.]

Here, defense counsel testified that he spoke with defendant at least 10 and up to 20 times about the multiple plea offers. According to defense counsel, he explained to defendant that if he were to be convicted of felony murder, "he would spend the rest of his life in prison." Defense counsel recollected telling defendant "over and over" that "[i]f you are convicted, you are going to spend the rest of your life in prison." While defense counsel did not recall using the phrase "life without parole," he testified that it was not possible that he did not inform defendant of the mandatory nature of the sentence accompanying a felony-murder conviction. Defense counsel testified that he had this discussion with defendant at least 10 and probably 20 times. Defense counsel testified that defendant rejected the plea offers for two reasons: first, the sentencing offer was too high, and second, he was not a murderer. Defense counsel testified that he "absolutely" explained the risks of going to trial to defendant. Defense counsel testified that defendant "would not accept responsibility for the murder . . . ." While defendant testified that defense counsel did not tell him that he "would" get a life-without-parole sentence, but rather that defendant "could" get a life sentence, the trial court found defense counsel's testimony credible. We give regard to the trial court's special ability to judge the credibility of witnesses who appear before it. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859, amended 481 Mich 1201 (2008); see also MCR 2.613(C). Defendant has not established that defense counsel's performance "fell below an objective standard of reasonableness . . . ." *Trakhtenberg*, 493 Mich at 51.

Finally, defendant in his Standard 4 brief asserts that the trial court improperly admitted prosecution exhibit 116, a transcript of text messages between defendant and Jones that occurred after the murder. Defense counsel raised an objection to the admission of the exhibit. We thus review the admission of this other-acts evidence for an abuse of discretion. *People v Dobek*, 274 Mich App at 58, 84-85; 732 NW2d 546 (2007). Approximately five weeks after the murder, defendant sent Jones multiple text messages asking Jones if he wanted to "rob" and commit home invasions. One of the messages about home invasion involved a woman present in a home "by herself" due to an injury from which she was suffering. To protect defendants against impermissible character inferences, claims of improperly admitted other-acts evidence are evaluated under a four-part test set forth in *VanderVliet*, 444 Mich at 55:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair

prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

Here, the prosecution's proper purpose for this evidence as stated in its notice of intent to use other-acts evidence was that the text messages were evidence of defendant's motive, scheme and plan, and intent, which are all proper purposes enumerated in MRE 404(b)(1).

It is insufficient to simply articulate a proper noncharacter purpose; the evidence also must be relevant. *People v Crawford*, 458 Mich 376, 387-388; 582 NW2d 785 (1998). In light of defendant's testimony, the text message exchange was relevant to demonstrate that defendant's plan or scheme to commit home invasions did not involve avoiding people being present in the homes at the time of the invasions. The evidence of defendant discussing robbing people made it less probable that defendant's scheme or plan was to avoid occupied residences, contrary to defendant's claims. *Id.* at 387. Moreover, the evidence was relevant to defendant's intent to conspire with others to enter the victim's occupied residence and commit larceny therein.

Additionally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The text message exchange demonstrated that defendant was planning bad acts similar to a charged crime. See *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012). The text messages occurred within six weeks of the events leading to the charges, demonstrating fairly close temporal proximity. *Id.* The text messages demonstrated that the other acts were not something that were infrequently occurring, but rather that defendant and Jones were frequently committing or discussing home invasions throughout the summer of 2013. *Id.* The evidence was also reliable because defendant admitted to sending and receiving the messages. *Id.* The evidence was also highly probative because it tended to contradict defendant's statements at trial, so there was a need for the other-acts evidence apart from defendant's own testimony. *Id.* at 487-488. "A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). The probative value of the text messages was not substantially outweighed by the danger of unfair prejudice.

Finally, the fourth prong of *VanderVliet*, 444 Mich at 55, allows the trial court to give a limiting instruction to the jury. "A limiting instruction generally 'suffice[s] to enable the jury to compartmentalize evidence and consider it only for its proper purpose . . . .'" *People v Mardlin*, 487 Mich 609, 629; 790 NW2d 607 (2010), quoting *Crawford*, 458 Mich at 399 n 16. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Contrary to defendant's claim, the jury was given a limiting instruction pertaining to, among other things, "improper acts for which he is not on trial." The trial court did not abuse its discretion when it admitted the exhibit.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Donald S. Owens