*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GEORGE FREDERICK ALLMAN,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2020

No. 348094
Wayne Circuit Court
LC No. 18-002187-01-FH

Before: GLEICHER, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to five years' probation for felon-in-possession and five years' imprisonment for each felony-firearm, second offense, conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

This case arises from the execution of a search warrant, stemming from a homicide investigation, at defendant's residence in Detroit. The house was a two-family home with upper and lower flats that shared a common front door and a common address. In one of the lower flat bedrooms, the police found an AR-15 assault rifle under the dresser and a 40-caliber handgun in the closet. The police seized a wallet containing defendant's identification and mail addressed to defendant from the nightstand in the same bedroom. In light of the evidence correlating defendant to the bedroom containing the firearms, he was arrested.

At the detention center, defendant spoke to Detective Michael Dowdy, agreed to waive his right to remain silent, and gave a recorded confession to the police. Defendant stated that he lived

-1-

in the lower flat with his fiancée, Kimberly Martin, and her four children.[1] Defendant and Martin were the only two adults who occupied the lower level northwest bedroom. He knew about both firearms in that room because he was holding the guns for his brother, Ronnie Johnson, for about a month. Defendant placed the rifle under the dresser, and he threw the handgun in the closet when he became aware of the police presence at the house. He also stated that only two people handled the weapons, defendant and Johnson, and the guns were last fired on New Year's Eve. Defendant stated that Johnson would admit that the weapons were his because he had no felonies.

However, at trial, defendant testified that his confession was untruthful. He denied that he lived in the lower level of the home with Martin and their children or to even having a key to access the lower level. Rather, defendant, his mother, his two adult brothers, his adult sister, and his sister's children purportedly lived in the upper two-bedroom flat, while his domestic partner, Martin, lived in the lower flat with her mother, uncle, and her children.[2]

On the day of the execution of the search warrant, defendant testified that he took his daughter to school. He then went to the lower level flat because Martin had a coffee maker. Defendant was about to sit down when he heard loud noises first coming from the front and then from upstairs. He looked out the window and saw the police everywhere. Defendant was in the dining room with his hands up when the police entered.

Also at trial, defendant testified that his statement to the police that he threw a gun in the closet was a lie. Rather, he took responsibility for the guns to prevent Children's Protective Services (CPS) from taking the children from Martin, who, according to defendant, was the subject of two ongoing CPS investigations at the time of the search. Defendant testified that he was unaware that there was a gun in the closet or a rifle under the dresser. He explained that he was able to confess to the type of guns in the room and their location because he overheard police conversations. Defendant also testified that he frequently lost items. Consequently, Martin would keep all of defendant's "stuff." Thus, the lower level bedroom contained defendant's wallet, mail, and clothing, including his t-shirt from his former employment, despite the fact that he lived in the upper flat.

On cross-examination, the prosecutor stated that wrongful activity would need to occur for CPS to take the children away and questioned defendant regarding what occurred that would warrant removal. Defendant stated that he was protecting Martin from "getting locked up" because it was her home where "the stuff was at," and CPS would remove the children upon Martin's arrest. Yet, he acknowledged that the police never mentioned CPS involvement during his interview. He also testified that he was unaware that he could be held responsible by CPS for what transpired in the home because he shared the children with Martin. Defendant continued to insist

---

[1] In his statement to the police, defendant referred to Martin as his fiancée. At trial, he essentially testified that they were "on and off" domestic partners. Although defendant was the biological father of only two of Martin's younger children, he considered and treated all of the children as his own.

[2] To corroborate this testimony, defendant presented lease agreements with defendant's name on the lease pertaining to the upper flat, and Martin's name on the lease pertaining to the lower flat.

that he did not have access to the lower level flat, and he had to call or knock to obtain entry to the lower level occupied by Martin and her family. Defendant explained that he lived in a separate area from his fiancée and children at the time the search warrant was executed. When the prosecutor asked if defendant was a liar, he responded, "[s]ometimes if I have to lie."

In response to juror questions, defendant testified that Martin was under CPS investigation because her two older children were allegedly molested by family members, but the investigation was now closed. When asked why he lied to the police despite the potential for criminal charges, defendant continued to assert that he believed that Martin would be left alone if he owned "up to everything."

The prosecutor sought to present rebuttal evidence regarding the CPS investigation. Specifically, the prosecutor advised that a police officer would testify that he oversaw a CPS worker search its database for Martin's name, and it came back negative. Defense counsel opposed this evidence, contending that CPS information was privileged, and only a CPS employee could testify regarding the existence of an open case. The trial court inquired if the parties could bring the investigating CPS worker in to testify. At that time, defense counsel argued that it would be extrinsic evidence on a collateral matter. The trial court rejected that argument, noting that defendant testified the CPS investigation was his motivation for lying to the police. Ultimately, defense counsel offered to provide the name and phone number of the CPS worker assigned to the case, but then agreed to call the worker in the defense case. However, when trial resumed, defendant rested without calling additional witnesses.[3] The parties proceeded to closing arguments. At that time, the prosecutor argued, without objection, that defendant's motivation to lie because of a CPS investigation was a "smokey screen" because CPS would not be concerned with the ownership of the weapons in the home, but rather whether they were secured from the children. Despite defendant's testimony and theory of the case, he was convicted as charged.

## II. ADMISSION OF EVIDENCE

Defendant contends that he was prejudiced when the trial court allowed police officers to testify that they had searched defendant's house pursuant to a homicide investigation. Although we conclude that it was erroneous to admit evidence that a homicide was the underlying reason for the execution of the search warrant, defendant failed to demonstrate plain error affecting his substantial rights arising from the admission of this evidence.

"[A] party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal" to preserve the issue for review. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Defendant did not object to testimony that the police obtained the search warrant for his house pursuant to a homicide investigation. Therefore, the issue of the testimony's admissibility is not preserved for review.

---

[3] At the start of trial before the jury pool entered the courtroom, defense counsel advised the trial court that "the only witness I may or may not call would be a Ronnie Johnson, who is not in the court at this time, he is out of town."

This Court reviews unpreserved issues for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotations marks and citation omitted; alteration in original).

MRE 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Although nearly all evidence offered by the prosecution is prejudicial to a criminal defendant to some extent, *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995), the exclusion of evidence is warranted when it is unfairly prejudicial to defendant, *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Evidence is unfairly prejudicial when there is a danger that the jury will give marginally probative evidence undue or preemptive weight by the jury. *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010).

Defendant contends that the trial court improperly admitted three references to a homicide investigation because the danger of unfair prejudice of this evidence outweighed the evidence's usefulness to the jury in deciding whether defendant possessed the guns. First, Officer Donald Watson testified that he arrived at defendant's house to assist members of the homicide unit, who were executing a search warrant. Second, the following exchange occurred between Officer Brandon Seed and the trial court as it relayed a juror's question:

> *Q*. What was the warrant specifically for?
>
> *A*. It was for evidence involved in a homicide, if I remember.
>
> *Q*. When you say evidence, you're talking about anything that would have to do with that homicide, such as weapons?
>
> *A*. Yes, sir.

Third, the trial court, again relaying a juror's question, asked Detective Dowdy how a homicide investigation had led the police to defendant's house. Detective Dowdy answered that a

suspect had stolen a murder victim's cell phone, which the police tracked as entering defendant's house about 10 minutes after the victim was shot.

The trial court erred in admitting the testimony regarding the homicide investigation because its minimal probative value to the issue of whether defendant possessed the guns was outweighed by the unfair risk that defendant's guilt would be inferred from his proximity to the investigation of a homicide. However, in light of the inculpatory evidence against defendant that included his admission to the possession of the weapons and his implausible recanting testimony at trial, there is no indication that the erroneous admission of this evidence impacted the outcome of the proceedings. Furthermore, shortly after acknowledging that a homicide victim's cellphone was traced to defendant's house, Detective Dowdy testified that neither of the guns at issue in this case matched the caliber of the weapon used in the homicide that led to the search warrant. Therefore, Detective Dowdy's testimony, read as a whole, coupled with the fact that defendant was not charged with murder, greatly reduced the danger of an inference between any homicide investigation and defendant's guilt in this case. The testimony by Officers Watson and Seed merely stated that the search warrant was obtained pursuant to a homicide investigation, and it was also defused by Detective Dowdy's more detailed explanation of the relationship between the homicide investigation and this case.

Under these circumstances, there is no reason to conclude that the jury convicted defendant because of the mention of a homicide investigation. Rather, the inculpatory evidence introduced against defendant included his hour-long, videotaped confession that he kept the guns for his brother Johnson in the lower level bedroom that he shared with Martin, he hid the rifle under the dresser, and he tossed the handgun in the closet when he became aware of the presence of the police. Although defendant recanted his confession at trial and denied even living in the lower level flat with his fiancée and their children, this testimony was belied by the discovery of his wallet, clothing, and personal mail in the bedroom where the guns were found. Additionally, defendant's confession described the weapons and their location in the room. Accordingly, defendant failed to demonstrate plain error affecting his substantial rights arising from the evidence that a homicide investigation initiated the search of defendant's home.

## III. PROSECUTORIAL MISCONDUCT[4]

Defendant alleges that he was prejudiced when the prosecutor argued facts not in evidence regarding CPS procedures. We disagree.

To preserve an issue of prosecutorial misconduct, a defendant must "contemporaneously object" to the statement at issue and request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object to the prosecutor's statements

---

[4] Although defendant characterizes the prosecutor's statements as misconduct, this Court has explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," because only the most extreme and rare cases rise to the level of "prosecutorial misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). However, we will use the phrase "prosecutorial misconduct" because it has become a term of art in criminal appeals. *Id*.

regarding standard CPS practices. Therefore, we review this unpreserved issue for plain error. *Carines*, 460 Mich at 763-764.

"A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). However, the prosecutor's remarks must be reviewed as a whole, in context, and "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. at 452.

The prosecutor, attempting to undermine defendant's claim that he falsely confessed to protect Martin in an ongoing CPS investigation, argued the following during her closing argument:

> If you want to believe the CPS issue, let's say you believe the Defendant, let's say he caught your heart strings and he is trying to protect his family and, oh my goodness, I didn't want the kids to be taken. Ladies and gentlemen, nothing that the Defendant did and stated in his confession would release or limit them from liability in the CPS getting involved and taking children away. Nothing. If anything, CPS would be questioning why there's weapons unsecured loaded in the home with all of these young children which was probably under the age of seven. That's what CPS would ask. They wouldn't care who, what, when and where the weapons were owned by. They don't care about that. If someone cared about who the weapons were owned by and who wants to claim possession, the only thing somebody would care about that is if they were guilty of it and they would potentially be charged criminally for it. And that's the Defendant.

The facts the prosecutor asserted regarding CPS's standard procedures and concerns were not admitted in evidence, and an employee of CPS did not testify to that effect. Therefore, the prosecutor's argument was premised on facts not admitted at trial. *Ackerman*, 257 Mich App at 450. However, a review of the record reveals that the prosecutor was responding to defendant's opening statement and evidence offered at trial. Specifically, defense counsel argued that defendant admitted to possessing the weapons in the bedroom because there was a CPS investigation pertaining to Martin and the children and he did not want her to get in any more trouble. At trial, defendant testified that he lied to protect Martin from CPS's removal of the children. Thus, the prosecutor's closing argument attempted to discredit this argument and testimony.

Under the circumstances, defendant was not prejudiced by the prosecutor's closing argument. Defendant offers no theory of the manner in which this particular argument persuaded the jury to convict him when it would have acquitted him otherwise. Indeed, the prosecutor's argument, improper or not, is not particularly persuasive regarding any material fact in this case. What CPS might or might be concerned about in a case like this one, is largely irrelevant to the question that was before the jury—whether defendant lied to the police in his confession because he believed that in doing so would protect Martin in a CPS investigation. The jury ultimately decided that defendant's confession—that he hid the guns in the bedroom he shared with Martin— was truthful, and defendant has not explained on appeal how that decision was attributable to the prosecutor's brief improper argument. Therefore, defendant has failed to establish that he is entitled to a new trial premised on prosecutorial misconduct.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant submits that defense counsel was ineffective for failing to call Johnson, who would have testified that the guns at issue in this case were his, and for failing to call an unidentified CPS worker, who would have provided background for defendant's claim that he falsely confessed to protect Martin in ongoing CPS investigations. He also contends that defense counsel was ineffective for failing to object to the references to a homicide investigation and to the prosecutorial misconduct. We disagree.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). When no *Ginther*[5] hearing is held in the trial court, appellate review is limited to mistakes apparent on the record. *Id.*[6]

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016). To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). However, counsel may be found ineffective for the strategy employed when it is not a sound or reasonable strategy. *People v Dalesandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defense counsel failed to demonstrate ineffective assistance of counsel for failing to call Johnson and a CPS worker as witnesses. There was no indication that these witnesses were available and willing to provide favorable testimony. At the start of trial, defense counsel

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[6] Defendant did not move the trial court for a new trial or evidentiary hearing. He moved this Court to remand this case for a *Ginther* hearing, but he failed to persuade this Court that remand was necessary. *People v Allman*, unpublished order of the Court of Appeals, entered February 7, 2020 (Docket No. 348094). Therefore, our review of this issue is limited to the existing record.

represented that he may call Johnson, but he was out of town. When defendant testified at trial, he represented that the guns belonged to Johnson. Irrespective of ownership, defendant confessed to his acceptance and placement of the weapons in his bedroom from Johnson. Possession of a firearm "may be actual or constructive and may be proved by circumstantial evidence." *People v Burgenmeyer*, 461 Mich 431, 437; 606 NW2d 645 (2000). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815, 818 (2011). A person's constructive possession of a firearm does not deprive a person of ownership of the firearm. See *People v Minch*, 493 Mich 87, 92; 825 NW2d 560 (2012). In support of this claim, appellate counsel presented an affidavit delineating "an interview" that she had with Johnson. This affidavit is not part of the record on appeal. Further, the statements Johnson made during the interview contradict the trial record. For example, Johnson claimed that he was present at trial, but was told that he would not be called to testify. However, defense counsel represented that Johnson was not present and was out of town. Although Johnson's statement indicated that he hid the weapons in the bedroom and defendant had no knowledge of their presence, it is unclear if Johnson was aware of defendant's personal knowledge, particularly in light of defendant's confession to the contrary. The unsworn statements relayed to appellate counsel through an interview are insufficient to support the claim.

With respect to the failure to call the CPS worker, defense counsel initially represented that he would call the investigating CPS worker at trial, the defense rested without doing so. However, there was no evidence that the CPS worker would have provided favorable, or even relevant evidence to the defense. Defendant fails to meet the factual predicate to support this claim.

We also reject defendant's contention that counsel was ineffective for failing to object to the testimony regarding the homicide investigation. We must examine possible strategic justifications for defense counsel's decisions, and the record reflects that defense counsel made a strategic decision to challenge the police investigation of defendant's possession case in light of the homicide. Specifically, defense counsel elicited that the police were not focused on defendant and his possession of a weapon, but rather were focused on the further investigation of a homicide in executing the search warrant. Because the actual focus of the investigation was to search for evidence pertaining to a homicide, defense counsel questioned the police regarding deficiencies in their search of defendant's home, including the failure to identify mail on the upper level flat that corroborated defendant's occupancy there. Further, the defense questioned the failure to fingerprint or take DNA evidence from the weapons found in the lower level bedroom upon learning that the caliber of the weapons did not match the weapon used in the homicide. Defense counsel's performance in failing to object to the testimony was not objectively deficient because his decision was strategically justifiable.

Lastly, defendant asserts that defense counsel was ineffective for failing to object to the prosecutor's closing argument. However, there is a presumption that defense counsel is effective, and we do not second-guess matters of trial strategy. *Trakhtenberg*, 493 Mich at 52; *Dunigan*, 299 Mich App at 589-590. In light of the record, we conclude that defense counsel failed to object as a matter of trial strategy. Defense counsel argued in closing argument that defendant admitted to something that he did not do to protect his family, defendant became emotional and had to gather himself when questioned about the truth, and defendant fabricated the confession to the police "because CPS is coming." Counsel further argued that defendant refused to accuse Martin in order

to protect the mother of his children.  If defense counsel had objected to the prosecutor's argument for stating facts not in evidence, the prosecutor could have countered by objecting to defendant's statements regarding the CPS investigation and the failure to substantiate its occurrence with evidence.  Under the circumstances, there is no reasonable probability that defendant would have been acquitted, but for defense counsel's failure to object to the prosecutor's argument.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro