*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DERIC WILLIAM THOMAS,

      Defendant-Appellant.

UNPUBLISHED
October 04, 2024
10:16 AM

No. 365845
Barry Circuit Court
LC No. 2022-000328-FH

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of false report of a felony, MCL 750.411a(1)(b), stemming from defendant's allegations that a corrections officer sexually assaulted him while in jail. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve 6 to 15 years in prison. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2021, while defendant was a pretrial detainee at the Barry County Jail, corrections officers received allegations that defendant possessed a weapon and had flooded his cell. In accordance with Barry County Jail policy, Sergeant Jarrod Goodrich and Officer Ronald Stevens handcuffed defendant and escorted him to the attorney's room to be searched for a weapon. Upon returning to his cell, defendant called the officers names, threatened to sue them, and alleged that Officer Stevens "slapped his dick" approximately 15 times.

The day after defendant's search, defendant approached Corrections Officer Thomas Steensma to report "that last night Deputy Stevens stroked his dick three times, picked up his balls and stuck his finger in his ass." During his verbal complaint, defendant stated that Sergeant Goodrich was in the room during the incident and that Sergeant Goodrich was a " 'piece of shit' and 'a little bitch.' " Officer Steensma asked defendant to write a statement and immediately relayed the information to his lieutenants. Detective Sergeant Janette Maki of the Barry County Sheriff's Office interviewed defendant that day.

-1-

Defendant began the interview by explaining his longstanding feud with Sergeant Goodrich. Throughout the interview, defendant repeatedly stated that a lot of people did not like Sergeant Goodrich and detailed unrelated incidents involving Sergeant Goodrich and himself, as well as incidents involving Sergeant Goodrich and others. Defendant explained that Sergeant Goodrich used to work with his aunt at Calhoun County Jail, and he "and Goodrich never got along. [Defendant] always called him good little bitch. And [defendant] called him a pussy ass bitch and smacked him once in Calhoun County Jail." Defendant stated that he head-butted and pushed Sergeant Goodrich outside of Calhoun County Jail approximately 10 years before the present incident. Defendant also explained that his cousin broke Sergeant Goodrich's nose while in jail.[1] Throughout the interview, defendant appeared to be more focused on his feud with Sergeant Goodrich than the alleged incident.

Regarding defendant's allegation, defendant explained that, while searching him, Officer Stevens "kept grabbing my dick and moving it around and feeling it up and down . . . ." When defendant objected and asserted that he was being sexually assaulted and molested, Sergeant Goodrich threatened to tase him in the neck. According to defendant, Officer Stevens then "grabbed my ass and rubbed his fingers up and down my ass crack and was poking it all around in there." Defendant clarified that Officer Stevens "immediately" touched his penis, but did not "stroke" his penis or penetrate his anus. Although defendant repeatedly stated that he was "molested," "sexually assaulted," and "sexually harassed" during the incident, he also stated that he thought the incident was more assaultive than sexual. During a second interview with Sergeant Maki, defendant compared the incident to "someone being held down and violently raped."

At trial, surveillance video footage was admitted that showed defendant: (1) flooding his cell by stuffing inmate attire into the toilet, (2) being escorted to the attorney's room for his search, (3) leaving the attorney's room 42 seconds later, and (4) being escorted back to his cell.

Defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his conviction of falsely reporting a felony because record evidence only supported that he reported a misdemeanor. Specifically, defendant argues that he only reported an assault and battery, MCL 750.81, because he reported that the touching was not done for sexual purposes. We disagree and conclude that defendant's allegations constituted first-degree criminal sexual conduct (CSC-I) and second-degree criminal sexual conduct (CSC-II), both of which are felony offenses.

Following a bench trial, we review a challenge to the sufficiency of the evidence de novo. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). We review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation

---

[1] Sergeant Goodrich testified that he only knew defendant from Barry County Jail—defendant never assaulted Sergeant Goodrich, and although a man had broken Sergeant Goodrich's nose in the past, it was not defendant's cousin.

-2-

omitted). "Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Moreover, when reviewing a sufficiency claim on appeal, "we must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the . . . verdict." *Id.*

MCL 750.411a(1) provides, in relevant part:

(1) Except as otherwise provided in subsections (2) and (3), a person who intentionally makes a false report of the commission of a crime, or intentionally causes a false report of the commission of a crime to be made, to a peace officer, police agency of this state or of a local unit of government, 9-1-1 operator, or any other governmental employee or contractor or employee of a contractor who is authorized to receive reports of a crime, knowing the report is false, is guilty of a crime as follows:

(a) Except as provided in subdivisions (b) through (e), if the report is a false report of a misdemeanor, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

(b) Except as provided in subdivisions (c) through (e), if the report is a false report of a felony, the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

Defendant was convicted of falsely reporting a felony, pursuant to MCL 750.411a(1)(b), for falsely reporting criminal sexual conduct allegations against Sergeants Goodrich and Stevens. When viewed in a light most favorable to the prosecution, record evidence was sufficient for a rational trier of fact to find that defendant falsely reported the felony offenses of CSC-I under MCL 750.520b(1)(d)(*ii*) and CSC-II under MCL 750.520c(1)(d)(*ii*) and MCL 750.520c(1)(*l*).

First, MCL 750.520b(1)(d)(*ii*) provides that a person is guilty of a CSC-I if he engages in sexual penetration with another person through force or coercion and that the actor was aided or abetted by another. As statutorily defined, " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). An "intrusion into the crease of the buttocks, but not into the anal cavity itself" is sufficient to satisfy the penetration element of CSC-I. *People v Anderson*, 331 Mich App 552, 560; 953 NW2d 451 (2020).

Defendant's allegation satisfied the sexual penetration element. The day after defendant's search, defendant told Officer Steensma "that last night Deputy Stevens stroked his dick three times, picked up his balls and stuck his finger in his ass." In defendant's written statement, defendant did not note anything about Officer Stevens sticking "his finger up [defendant's] ass." However, Officer Steensma's report noted that defendant made that allegation in his verbal recounting of the incident. Later, during his interview with Sergeant Maki, defendant explained, "[Officer Stevens] grabbed my ass and rubbed his fingers up and down my ass crack and was poking it all around in there." Also, during his interview, defendant specifically denied that Officer

Stevens ever penetrated his anus. Although defendant offered inconsistent accusations, he stated that, at the very least, Officer Stevens's hand intruded into the crease of his buttocks. Accordingly, defendant's allegation satisfied the penetration element of first-degree criminal sexual conduct. See *id*.

Additionally, defendant's allegations satisfied both the force-or-coercion and aided-by-another elements. The following circumstance constitutes force or coercion when used to accomplish sexual penetration: "When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats." MCL 750.520b(1)(f)(*ii*). In this case, defendant stated that when he told Officer Stevens to stop touching him, Sergeant Goodrich threatened to tase defendant's neck. Because Sergeant Goodrich carried a Taser, defendant would have reasonably believed that Sergeant Goodrich was able to execute such a threat. Therefore, defendant's allegation also satisfied the force-or-coercion and aided-by-another elements of first-degree criminal sexual conduct under MCL 750.520b(1)(d)(*ii*).

Defendant's allegation also constituted CSC-II under MCL 750.520c(1)(d)(*ii*). For the reasons previously discussed, defendant's allegation satisfied the force-or-coercion and aided-by-another elements of second-degree criminal sexual conduct under MCL 750.520c(1)(d)(*ii*). Therefore, the only element that remains to be analyzed is whether there was sexual contact.

During his interview, defendant told Sergeant Maki that he thought that the incident was more assaultive than sexual. However, when Sergeant Maki asked defendant whether Officer Stevens "was doing it for a sexual intent," defendant responded: "I wouldn't say for a sexual intent, I'd just more or less, m—you know, molesting me. Like if you touch somebody, like if there's a little girl and I touched her private part, what is that? That's molesting, isn't it?" Moreover, during his interview, defendant repeatedly stated that he was "molested," "sexually assaulted," and "sexually harassed" during the incident. Defendant also went on to say, "I don't know if you'd consider it a sexual assault, but I mean, to me, it seems like somebody was getting raped on the ground or raped."

Defendant argues that, because he reported that the touching was not done for sexual purposes, there was no sexual contact. However, "[a]ccording to *Random House Webster's College Dictionary* (1997), the definition of 'molest' includes 'to make indecent sexual advances to' and 'to assault sexually.' " *Doe v Citizens Ins Co*, 287 Mich App 585, 587; 792 NW2d 80 (2010). Therefore, even if defendant was somewhat unclear on what constituted sexual intent, his own report of the incident still satisfied the requirement that the touching was done for a sexual purpose. Accordingly, defendant's allegation satisfied the sexual-contact element under MCL 750.520c(1)(d)(*ii*).

Finally, defendant's allegations also constituted CSC-II under MCL 750.520c(1)(*l*), which provides that a person is guilty of CSC-II if the person engages in sexual contact with another person and the "actor knows or has reason to know that a court has detained the victim in a facility while the victim is awaiting a trial or hearing, . . . and the actor is an employee or contractual employee of, or a volunteer with, the facility in which the victim is detained . . . ." For the reasons previously discussed, defendant's allegation satisfied the sexual-contact element under MCL 750.520c(1)(*l*). Because defendant's allegation involved an incident that took place in a jail—and

was conducted by corrections officers—his allegation constituted second-degree criminal sexual conduct under MCL 750.520c(1)(*l*).

In sum, there was sufficient evidence to support defendant's conviction of falsely reporting a felony, MCL 750.411a(1)(b), because defendant's allegations against the sergeants constituted CSC-I under MCL 750.520b(1)(d)(*ii*) and CSC-II under MCL 750.520c(1)(d)(*ii*) and MCL 750.520c(1)(*l*), all of which are felonies.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL RELATED TO OTHER-ACTS EVIDENCE

Next, defendant argues that defense counsel was ineffective for not objecting to the admission of other-acts evidence. Because the other-acts evidence was admissible at trial, we disagree.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's finding is clearly erroneous when, although there is evidence to support it, we are, on the whole record, left with a definite and firm conviction that a mistake was made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). Because the trial court did not conduct an evidentiary hearing, our review is limited to the record. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

To prove ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51 (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation omitted). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id.* (citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52 (citation omitted). An unsuccessful trial strategy does not inherently render it unreasonable and rebut the presumption of effective assistance. See *Trakhtenberg*, 493 Mich at 53 n 8; *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). Furthermore, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Zitka*, 335 Mich App 324, 341; 966 NW2d 786 (2020) (quotation marks and citation omitted).

In this case, defendant argues that defense counsel was ineffective for not objecting to the admission of other-acts evidence. Before trial, the prosecution filed a notice of intent to admit evidence of other incidents involving defendant at the Barry County Jail. Defense counsel did not respond to this notice nor object to the evidence at trial. Accordingly, Sergeant Goodrich testified that: (1) on March 10, 2021, defendant urinated on his bed then accused Sergeant Goodrich of urinating on his bed; (2) on March 25, 2021, defendant denied to Sergeant Goodrich that he wrote an anonymous note—stating that someone had sexually assaulted him—despite his actions being

video recorded; and (3) on June 21, 2021, defendant denied flooding his jail cell, despite his actions being video recorded.[2]

Under former MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[3] However, such evidence is admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." *Id*. "MRE 404(b) is a rule of inclusion, meaning it permits the admission of any logically relevant evidence even if it also reflects on a defendant's character, so long as the evidence is not relevant solely to the defendant's character or criminal propensity." *People v Spaulding*, 332 Mich App 638, 649; 957 NW2d 843 (2020) (quotation marks, citation, and emphasis omitted).

To be admissible under MRE 404(b), other-acts evidence must meet the following requirements:

> First, that the evidence be proffered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

Our review of the record indicates that each of the cited instances of other-acts evidence was admitted for the proper purpose of establishing motive. See MRE 404(b)(1). Motive is "the moving power which impels to action for a definite result." *People v Hoffman*, 225 Mich App 103, 106; 570 NW2d 146 (1997). Part of the prosecution's theory of the crime was that defendant harbored animosity toward Sergeant Goodrich in the weeks leading up to the search that motivated him to fabricate false allegations of sexual assault involving him. The other-acts evidence involved instances shortly before the search in which defendant engaged in misconduct and was confronted by Sergeant Goodrich. In one of these instances, after Sergeant Goodrich discovered that defendant urinated on his bed, defendant accused Sergeant Goodrich of soiling the bed. In an instance from the day of the search, defendant flooded his cell and then threatened Sergeant

---

[2] Defendant also challenges the admission of statements defendant made to Sergeant Goodrich listed in the MRE 404(b) notice, including calling Sergeant Goodrich a "fa**ot" and "bitch" and threatening to fight him, as inadmissible under MRE 404(b). However, a defendant's out-of-court statement is not a prior act for purposes of MRE 404(b). *People v Goddard*, 429 Mich 505, 514-515; 418 NW2d 881 (1988). Rather, a defendant's own statement offered against him is admissible as nonhearsay under MRE 801(d)(2). Regardless, we address these statements because defendant also challenges their admissibility under MRE 401 and MRE 403.

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

Goodrich after he turned the water off. These instances demonstrated that defendant had personal animosity toward Sergeant Goodrich. Accordingly, the evidence was admissible for the proper purpose of proving motive.

Second, the evidence was relevant to establishing defendant's motive for fabricating sexual assault allegations involving Sergeant Goodrich. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Although the prosecution does not have to prove motive to obtain a conviction, motive is relevant. See *People v Rice*, 235 Mich App 429, 440; 597 NW2d 843 (1999). The evidence demonstrating defendant's personal animosity toward Sergeant Goodrich was relevant because it made it more probable that defendant fabricated allegations against him.

Evidence that is relevant and offered for a proper purpose may nevertheless be excluded under MRE 403 if its probative value was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Unfair "prejudice means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Instead, evidence is unfairly prejudicial when there "is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *Id*.

On appeal, defendant contends that the evidence was unfairly prejudicial because it only showed that defendant had a general motive to lie or act out. This argument ignores that the cited evidence is not simply instances in which defendant generally lied or acted out, but prior occasions in which defendant demonstrated animus specific to Sergeant Goodrich, threatened him, and lied to him or about him. The evidence was specifically related to an issue in the case—whether defendant made false allegations of sexual assault involving Sergeant Goodrich—and was narrowly tailored to only include past interactions between defendant and Sergeant Goodrich. Because the evidence was narrowly tailored and directly related to motive, the probative value of the evidence was not outweighed by the danger of unfair prejudice. Accordingly, the evidence was admissible. Because the other-acts evidence was properly admitted, defense counsel was not deficient for failing to raise a meritless argument. See *Zitka*, 335 Mich App at 341.

Even if trial counsel provided deficient performance by not objecting to this evidence, defendant has failed to demonstrate that trial counsel's performance resulted in outcome-determinative prejudice. See *Trakhtenberg*, 493 Mich at 51. Defendant's own interview statements in this case contained sufficient evidence for the trial court to reasonably determine that defendant falsely reported a felony. Defendant's allegations were inconsistent between his initial disclosure and his interview the very next day. Additionally, despite the breadth of allegations that defendant made, surveillance video footage showed that defendant was only in the attorney's room for 42 seconds, and Officer Stevens and Sergeant Goodrich both testified that nothing out of the ordinary occurred during defendant's search. Moreover, general motive evidence was introduced by Sergeant Goodrich who testified that: (1) defendant's claim that he knew Sergeant Goodrich before entering Barry County Jail was baseless; (2) defendant routinely called him

names, challenged him, and threatened him; and (3) he occasionally wrote up defendant, which made defendant not like him.

Therefore, defense counsel's performance was not deficient, and even if it were, defendant did not show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See *id*.

## IV. THE PRISON RAPE ELIMINATION ACT AND DIMINISHED CAPACITY

Defendant further argues that there was insufficient evidence that defendant reported the felony in bad faith, and, accordingly his report was protected from prosecution under the Prison Rape Elimination Act (PREA), 34 USC 30301 *et seq*. Because sufficient evidence supports that defendant intentionally reported false allegations of sexual abuse, we disagree.

Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

28 CFR 115.78(f) states as follows: "For the purpose of disciplinary action, a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation." However, "PREA does not protect from disciplinary action inmates who report sexual abuse and whose report is deemed false. PREA standards clearly anticipate disciplinary sanctions against an inmate who makes a false allegation of sexual abuse against a staff member of a facility covered by PREA." *People v Kroll*, 341 Mich App 217, 235; 989 NW2d 822 (2022).

Defendant argues that his allegation was made in good faith; therefore, he should be provided protection under PREA. However, for the reasons previously discussed, there was sufficient evidence to find defendant guilty of intentionally making a false allegation of sexual abuse against a corrections officer at Barry County Jail, negating that defendant made the allegations in good faith. Therefore, defendant is not entitled to protection under PREA. See *id*.

Defendant also briefly argues that: (1) a diminished capacity defense is wrongfully not recognized by Michigan, and (2) his cognitive-impairment and memory-loss issues display that he did not make the allegation in bad faith. However, the Michigan "Legislature has demonstrated its policy choice that evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent." *People v Carpenter*, 464 Mich 223, 237; 627 NW2d 276 (2001). The Michigan Supreme Court recently declined to disturb its previous holding in *Carpenter*. *People v Tyson*, 511 Mich 1080; 992 NW2d 293 (2023). "We are bound by the rule of stare decisis to follow the decisions of our Supreme Court." *Duncan v Michigan*, 300 Mich App 176, 193; 832 NW2d 761 (2013) (quotation marks and citation omitted). Therefore, we are bound by *Carpenter*'s decision that diminished capacity is not a recognized defense.

## V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant further argues that the trial court did not make adequate findings of fact and conclusions of law. Concluding that the trial court made sufficient findings of fact and addressed the arguments raised by defendant at trial, we disagree.

We review a trial court's finding of fact in a bench trial for clear error and questions of law de novo. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). We review the trial court's findings "in the context of the specific legal and factual issues raised by the parties and the evidence." *Id*. at 479 (quotation marks and citation omitted). "[T]he trial court is obligated to find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record." *People v Xun Wang*, 505 Mich 239, 250; 952 NW2d 334 (2020) (quotation marks and citation omitted). "Factual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law. The court need not make specific findings of fact regarding each element of the crime." *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992) (citation omitted). Moreover, a trial court's failure to find the facts does not require remand when "it is manifest that the court was aware of the factual issue, that it resolved the issue, and that further explication would not facilitate appellate review." *Id*. at 134-135.

In this case, the trial court found defendant guilty of false report of a felony, reasoning that defendant was clearly reporting what he believed to be a criminal sexual assault on himself. But the court found "a number of things that make what the Defendant says throughout this not believable at all." The court noted that defendant's statements were immediately inconsistent and that he could not "keep his story straight": "One time it's stroking, one time says not, one time says finger up the butt, one time it says—you're not going to forget that. I mean that happened or it didn't." The court also noted that defendant alleged to have known Sergeant Goodrich in the past, but that was not true. The court further noted that defendant lied about the flooding incident: "There's no credibility whatsoever." The court posited that "[t]here's clearly a motive here because for whatever reason he does—he does not like Sergeant Goodrich, at all." Finally, the court noted that, on the basis of its own prior interactions with defendant, the court knew him to be "very verbal. He tells us he has a problem." So, the trial court opined, if the incident had happened as alleged "he probably would've got into it with [the officer] in the room and he definitely would've come out with an attitude." The court concluded that it had no doubt about defendant's guilt in this case.

In sum, the trial court rejected defendant's argument that his report constituted a misdemeanor assault and battery. The trial court also discussed: (1) the inconsistencies in defendant's reports, (2) defendant's lack of credibility, and (3) defendant's motive to falsely accuse Sergeant Goodrich. These findings indicate that the trial court rejected defendant's argument that his report was made in good faith. Defendant briefly argues that the trial court based its credibility assessment on its personal knowledge of defendant; however, when read together, the trial court's findings demonstrate that the trial court was aware of the issues in the case and correctly applied the law. Any error in discussing defendant's previous interactions with the trial court was harmless because it was not the basis on which the trial court made its decision, but, rather, a statement

made after the trial court discussed its sound reasoning. Accordingly, the trial court made sufficient findings of fact and conclusions of law.

## VI. UPWARD DEPARTURE

Finally, defendant further argues that the trial court abused its discretion by sentencing defendant above the recommended sentencing guidelines range. Because the trial court justified the extent of the departure, we disagree.

Sentences that departs from the applicable guidelines range are reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[A]ppellate review of departure sentences for reasonableness requires review of whether the trial court abused its discretion by violating the principle of proportionality . . . ." *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017). The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (quotation marks and citation omitted).

Although the sentencing guidelines are only advisory, *Lockridge*, 498 Mich at 399, "the guidelines remain a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take . . . into account when sentencing." *Steanhouse*, 500 Mich at 474-475 (quotation marks and citation omitted). However, under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472 (quotation marks and citation omitted). Under the proportionality standard, the trial court may consider, but is not limited to, the following factors:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

When a trial court imposes an out-of-guidelines sentence, it "must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted). This Court may not "speculate about conceivable reasons for departure that the trial court did not articulate or that cannot reasonably be inferred from what the trial court articulated." *People v Smith*, 482 Mich 292, 318; 754 NW2d 284 (2008). The extent of an out-of-guidelines sentence—not merely the departure itself—must also satisfy the principle of proportionality. *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990). However, "[a] departure sentence does not need to be arithmetically measured." *People v Lawhorn*, 320 Mich App 194, 211; 907 NW2d 832 (2017).

On appeal, defendant first argues that the trial court abused its discretion by disregarding defendant's rehabilitative potential and mental-health concerns. This argument lacks merit. The

record reflects that the trial court was aware of defendant's mental-health concerns, which were documented in defendant's presentence investigation report and discussed at sentencing. However, the trial court ultimately determined that the other sentencing factors outweighed those concerns. Similarly, the trial court explained that defendant was offered rehabilitative efforts in the past, but his extensive criminal history indicated that society needed to be protected from him. Given his extensive criminal history, the trial court held valid concerns about defendant's potential for rehabilitation.

Defendant further argues that the trial court did not specify why the guidelines were inadequate. We disagree.

Defendant's minimum sentencing range was 5 to 46 months' imprisonment. He was sentenced to 72 to 180 months' imprisonment, a 26-month upward departure from the sentencing guidelines. The trial court explained that the guidelines did not fully account for defendant's prior convictions. See *Walden*, 319 Mich App at 352-353. For example, defendant had 36 prior misdemeanors, 11 of which were assignable; however, the guidelines only accounted for seven of them. See MCL 777.55. Similarly, defendant had seven prior felonies; however, the guidelines only accounted for four of them. See MCL 777.52.

Additionally, the trial court found that because Offense Variable 9 only accounted for victims who were placed in physical danger, the guidelines did not account for the fact that there were victims in this case. See MCL 777.39. The trial court explained that false reports of criminal sexual conduct are particularly harmful and follow people's reputations around. Notably, Sergeant Goodrich testified that this incident influenced his decision to find another job. Lastly, by adopting the prosecution's closing arguments, the trial court also explained that the guidelines did not account for defendant's pattern of misconduct within the jail.

Therefore, the trial court justified its reasons for the departure and considered whether the guidelines accurately considered, and reflected, the seriousness of defendant's crime. Accordingly, the trial court provided adequate justifications to explain why the upward departure was proportionate to the seriousness of the matter. Considering the length of the departure, the evidence in the record, and the trial court's statements in support of the sentence, the trial court did not abuse its discretion, and the sentence imposed was both reasonable and proportionate.[4]

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney

---

[4] Defendant further argues that a different judge should be assigned on remand; however, because remand is unnecessary, the issue of judicial reassignment is moot.