*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HAROLD HADLEY GONZALES,

        Defendant-Appellant.

UNPUBLISHED
January 08, 2025
9:42 AM

No. 362857
Washtenaw Circuit Court
LC No. 21-000109-FH

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with a dangerous weapon (felonious assault), MCL 750.82, larceny in a building, MCL 750.360, and two counts of domestic violence, MCL 750.81(2). He was sentenced to two to four years' imprisonment for the felonious assault and larceny-in-a-building convictions and 93 days' imprisonment for the domestic violence convictions. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant and the victim were involved in a romantic relationship. Defendant lived with the victim and her children for a few months in 2020. Throughout their brief relationship, defendant assaulted the victim several times. When he moved out, defendant took with him some of the victim's belongings. The victim reported defendant's behavior to Helen Cowton, defendant's parole officer, and he was arrested for these offenses.

Defendant remained in custody until trial. Trial was delayed several times, mostly due to COVID-related illnesses. Agent Cowton testified at trial regarding her investigation into the victim's allegations. Defendant was then convicted. Sentencing was delayed to give defense counsel time to prepare a sentencing memorandum. Defendant was eventually sentenced as noted. This appeal followed.

## II. OTHER-ACTS EVIDENCE

Defendant contends Agent Cowton's testimony was improper other-acts evidence under MRE 404(b)(1). We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). This issue is unpreserved because defendant did not object to the admission of Agent Cowton's testimony in the proceedings below. *Id.*

Usually, preserved evidentiary issues are reviewed for an abuse of discretion. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "But, because this issue is unpreserved, this Court's review is limited to plain error affecting substantial rights. *Id.* at 202. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

This issue also involves the interpretation of the Michigan Rules of Evidence. "This Court reviews de novo whether the trial court properly interpreted and applied the rules of evidence." *People v McFarlane*, 325 Mich App 507, 517; 926 NW2d 339 (2018). "When construing court rules, including evidentiary rules, this Court applies the same principles applicable to the construction of statutes. Accordingly, we begin with the rule's plain language, and if that language is unambiguous, we enforce its plain meaning without further judicial construction." *People v Jackson*, 498 Mich 246, 257-258; 869 NW2d 253 (2015) (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

The former version of MRE 404(b)(1)[1] stated:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

---

[1] The Michigan Rules of Evidence were recently amended. See Administrative Order No. 2021-10, ___ Mich ___ (2023), effective January 1, 2024. Because this case occurred before these amendments became effective, the former version of the rules of evidence applies.

"The first sentence of this rule represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). "This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Id*.

Several factors must be present to justify the use of other-acts evidence:

First, the prosecutor must offer the prior bad acts evidence under something other than a character or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b). Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004) (quotation marks and citation omitted).]

On appeal, defendant specifically challenges the third requirement, that the introduction of Agent Cowton's testimony was unfairly prejudicial. "[P]rejudice means more than simply damage to the opponent's cause." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Indeed, "[a] party's case is always damaged by evidence that the facts are contrary to his contentions[.]" *Id*. In this context, "evidence presents the danger of unfair prejudice when it threatens the fundamental goals of MRE 403: accuracy and fairness." *Vasher*, 449 Mich at 501.

Defendant asserts that this case was largely a "credibility contest" between him and the victim, and the evidence showing defendant was on parole unfairly tipped the scales in the government's favor. Contrary to defendant's argument, there is no evidence in the record showing the testimony about defendant's parole status was unfairly prejudicial. Agent Cowton's testimony focused on the victim's report and Agent Cowton's subsequent investigation; there was no testimony about defendant's prior convictions or the reason for his parole. We further note that defendant was acquitted of aggravated domestic violence, MCL 750.81a(2), which further lessens the likelihood that defendant was prejudiced by Agent Cowton's testimony. Defendant has thus failed to demonstrate plain error warranting reversal.

## III. SENTENCING

Defendant contends the trial court violated his speedy-trial rights when it failed to ensure his case was brought to trial within 180 days as required by MCL 780.131. He also argues he is entitled to time served for his pretrial incarceration. We agree, in part, and disagree, in part.

## A. STANDARD OF REVIEW

"Whether defendant was denied his right to a speedy trial is an issue of constitutional law, which we . . . review de novo." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). This issue also involves question of statutory interpretation, which are reviewed de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).

## B. LAW AND ANALYSIS

It is necessary to first disentangle defendant's speedy-trial argument from his challenge to the alleged violation of the "180-day rule" under MCL 780.131. In *People v Witkoski*, 341 Mich App 54, 60; 988 NW2d 790 (2022), this Court held that "[t]he 180-day rule is distinct from a criminal defendant's constitutional right to a speedy trial under our federal and state Constitutions[.]" Defendant conflates these concepts on appeal, arguing that the 180-day rule was violated in this case, and therefore his Sixth Amendment speedy-trial rights were also violated. The 180-day rule and the right to a speedy trial are distinct legal concepts, and one should not be treated as informing the other. *Id.* Even so, there is no error when we examine these issues separately.

### 1. 180-DAY RULE

MCL 780.131(1) articulates the 180-day rule:

Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint.

"[T]he 180-day period begins to run the day after the prosecutor receives notice that a defendant is incarcerated and awaiting trial on pending charges." *Williams*, 475 Mich at 256 n 4. These consequences apply when there is a violation of this rule:

In the event that, within the time limitation set forth in [MCL 780.131], action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. [MCL 780.133.]

Defendant argues this rule was violated because his trial began more than 180 days from his date of arrest. The relevant date is not the day a defendant is arrested, but rather the date the Michigan Department of Corrections (MDOC) notifies the prosecuting attorney of defendant's incarceration. MCL 780.131(1); *Williams*, 475 Mich at 256 n 4. There is no evidence in this case as to when the MDOC notified the prosecutor of defendant's incarceration, and defendant presents none on appeal. Therefore, it is impossible to determine whether a violation of the 180-day rule actually occurred.

Defendant's argument suggests that trial must begin within the 180-day period. But, "[t]he statute does not require the action to be commenced so early within the 180-day period as to insure trial or completion of trial within that period." *People v Hendershot*, 357 Mich 300, 304; 98 NW2d 568 (1959). Rather, "[i]f . . . apparent goodfaith [sic] action is taken well within the period and

the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met." *Id*. Defendant offers no explanation on appeal explaining why the prosecutor's pretrial actions were not a good faith attempt to ready the case for trial. Accordingly, we reject defendant's assertion of a violation of the 180-day rule.

## 2. SPEEDY TRIAL

Criminal defendants have a constitutional right to a "speedy and public" trial. US Const, Am VI; Const 1963, art 1, § 20. This speedy-trial guarantee is "designed . . . to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges[.]" *United States v MacDonald*, 456 US 1, 2; 102 S Ct 1497; 71 L Ed 2d 696 (1982). Called the "*Barker* test," a court should balance the following factors in determining whether a defendant's speedy-trial rights have been violated: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). "[N]one of the four factors [are] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker v Wingo*, 407 US 514, 533; 92 S Ct 2182; 33 L Ed 2d 101 (1972). Instead, courts should "engage in a difficult and sensitive balancing process." *Id*. Under the fourth prong, there is a rebuttable presumption of prejudice if the delay exceeds 18 months. *Cain*, 238 Mich App at 112.

Applying the first factor of the *Barker* test, the time period commenced when the defendant was arrested on October 23, 2020, and ended with the first day of trial on March 14, 2022—a period of 16 months, 19 days. The span between defendant's arrest and trial was less than 18 months.[2] Therefore, prejudice is not presumed in this instance, and defendant must demonstrate he was prejudiced by the delay. *Cain*, 238 Mich App at 112.

"[I]n determining prejudice to a defendant, we do not look at how the prosecutor's case was improved during the delay, but to whether the defendant's defense was degraded." *People v Holtzer*, 255 Mich App 478, 494; 660 NW2d 405 (2003). Defendant argues on appeal the delays were caused by the "prosecutor's own unpreparedness" in ensuring Agent Cowton's testimony at the initial November 2021 trial date, causing him to suffer prejudice. But, he offers no explanation of why his defense was degraded by the delay, thus abandoning his argument. See *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014) ("[F]ailure to properly argue the merits of [an] issue results in it being abandoned."). The record also does not show how defendant's case was prejudiced by the delay of the proceedings.

Again, because defendant was not incarcerated for more than 18 months, prejudice cannot be presumed, *Cain*, 238 Mich App at 112, and, in the absence of any argument or evidence explaining why his defense was degraded, this Court cannot conclude defendant's speedy-trial

---

[2] Defendant claims on appeal he "was held because of these charges for approximately 18 months prior to trial." He does not explain his calculation of this time span, or whether the record incorrectly cited the relevant dates.

rights were violated. See *People v Konopka*, 309 Mich App 345, 366; 869 NW2d 651 (2015) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]").

That aside, we note that defendant's trial was not delayed because of the prosecutor's unpreparedness; it was delayed by pandemic-related illness. We have held that pandemic-related delays should not be held against the prosecutor in evaluating speedy-trial claims. *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5.

### 3. JAIL CREDIT

MCL 769.11b states:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

In other words, "the trial court must grant jail credit when a defendant is held in jail for the offense of which he or she is ultimately convicted if he or she is denied or unable to furnish bond for that offense." *People v Allen*, 507 Mich 597, 606; 968 NW2d 532 (2021). Therefore, "individuals who are detained in jail for some reason other than the denial of or inability to furnish bond are not entitled to jail credit." *Id*. In the specific instance of a parole detainer, the defendant's "[e]ntitlement to jail credit . . . ends when detention for the parole violation begins." *Id*. at 607. In *Allen*, the defendant served a total of 17 days before the MDOC invoked the parole detainer. *Id*. at 608. Therefore, the defendant was entitled to 17-days' credit under MCL 769.11b. *Id*.

In defendant's motion for new trial, he asserted he "was held on a parole detainer from his arrest until sentencing." Defendant is thus not entitled to jail credit because he was held on a parole detainer through the entirety of his pretrial detention.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues counsel was ineffective for failing to object to Agent Cowton's testimony and for unfairly delaying trial. We disagree.

### A. STANDARD OF REVIEW

Although defendant moved for a new trial or an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), the trial court denied defendant's request, and no such hearing was held. In the absence of an evidentiary hearing, this Court's review "is for errors apparent on the record." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). "A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted). "When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of

law.  The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake."  *Id*. at 671-672 (citation omitted).

## B.  LAW AND ANALYSIS

The constitutions of the United States and Michigan guarantee the right to effective assistance of counsel.  US Const, Am VI; Const 1963, art 1, § 20.  "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different."  *Shaw*, 315 Mich App at 672.  Effective assistance is presumed, and a defendant claiming ineffective assistance bears a heavy burden to prove otherwise.  *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002).

Defendant first argues defense counsel was ineffective for failing to object to Agent Cowton's testimony that he was on parole at the time of the offenses in this case.  He claims that, without this evidence, the jury would have only been left with the two competing narratives of the victim's testimony and his own.  Agent Cowton's testimony lent further credibility to the victim, which ultimately prejudiced defendant.  We reject this argument at the outset because, as discussed, the trial court did not err in admitting this evidence, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Moreover, Agent Cowton did not testify about the reason defendant was on parole or defendant's criminal history.  Agent Cowton's testimony did not rise to the level of describing any "other acts" suggesting defendant's character or propensity, and, therefore, the admission of this evidence was not erroneous.  The record also demonstrates that defendant himself emphasized his parole status during his own testimony.  Defendant's answers on direct examination strayed from defense counsel's questions by offering, unprompted, further information about his status as a parolee.  Indeed, when defendant's testimony went in this direction, defense counsel attempted to redirect him by warning: "[W]e don't need to get into the parole officer."  Then, in closing argument, defense counsel acknowledged defendant's testimony that defendant's parole status was a factor in the "toxic" relationship with the victim, but argued that it did not mean defendant committed these offenses.  Defendant's repeated emphasis on defendant's parole status, which defense counsel tried to manage, cannot now be used as an appellate parachute.  *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010) ("[A] party may not harbor error at trial and then use that error as an appellate parachute[.]").

Defendant next claims that counsel was ineffective for "requesting unnecessary and unreasonable adjournments."  Defendant argues that defense counsel improperly delayed trial by demanding Agent Cowton's in-person appearance.  While it is true that, at the November 29, 2021, and January 31, 2022 hearings, defense counsel stated she would not agree to Agent Cowton's remote testimony, there were obvious strategic reasons for this demand.  Most notably, jurors are more able to judge a witness's veracity by viewing them in person, rather than remotely via videoconferencing technology.  See *People v Buie*, 285 Mich App 401, 410-411; 775 NW2d 817

(2009) (rejecting the argument that "videoconferencing procedure . . . may be sufficiently equivalent to physical, face-to-face confrontation.").

Affirmed.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica